WILLIAM V. K. LANSING and WILLIAM R. LANSING *vs.*
STEPHEN COLEMAN.

58b 611
58ad421

One not authorized to make a sale of property, by its owner, but simply to advertise it for sale and procure some person to negotiate with the owner, cannot make a representation or warranty respecting it which will be binding upon the owner, without his authority or knowledge.

Such an agent is not clothed with any real or apparent authority to make any representations on the subject.

The defendant, having an interest in a manufacturing copartnership which he wished to sell, requested R. to procure a purchaser for the same, agreeing, in case he did so, to give him a certain portion of the purchase money, if a purchaser at a certain price was found. There was no evidence of any representations made by the defendant to R. or of any express authority to R. to make any representations or statements respecting the property; and no proof of any knowledge on the part of the defendant that any representations or statements had been made by R.; nor was there any authority given to R. to make a sale of the property. *Held* that representations made by R. to the plaintiffs, prior to a negotiation between the latter and the defendant, for the purchase and sale of the property, were not admissible in evidence against the defendant.

*Held, also,* that the case was within the principle laid down in *Smith* v. *Tracy,* (36 *N. Y.* 79.)

*Held, further,* that proof of such representations could not be deemed immaterial, inasmuch as the defendant himself was proved to have made the same representations, at the time of the sale; because the court could not see that the jury might not have based their verdict, to some extent, on the representations claimed to have been made by R.

THIS was an action in the nature of an action on the case, for false and fraudulent representations made by the defendant to the plaintiffs, whereby they were induced to purchase from the defendant his interest in a certain fruit-jar business.

The plaintiffs alleged, in their complaint, that on the 17th day of July, 1868, the defendant being engaged in business, at Rochester, with another person or persons, in the manufacture and sale of Spencer's patent fruit jar, and having offered to sell out the undivided one half of the patent for making said jar, one half of the stock on hand, one half of the accounts and debts due to him and his associates, in the business so carried on by him for

the year 1868, and one half the profits thereof accruing since January 1, 1868, did, with intent to deceive and defraud the plaintiffs, falsely and fraudulently represent to them that the said business as theretofore conducted by him was a profitable business; that they had sold in said business upwards of 2500 gross of jars during the year 1868, at a profit of $5 per gross for each gross so sold; that the business had realized upwards of $10,000 profits, one half of which would accrue to the plaintiffs; that the accounts due and appearing upon his books to him and his associates in said business were all good accounts, for goods actually sold and delivered by him and his associates, and amounted to between $12,000 and $14,000, and exceeded $12,000, and would be paid so as to enable the plaintiffs to meet the liabilities which they were assuming in the purchase of said business; that the persons conducting said business only owed for glass jars to a firm of Southwick & Reed, the greater part of which would not mature until the fruit season of 1869, meaning the summer of 1869. That the plaintiffs, relying upon said representations, purchased of the defendant his interest in said business, including stock on hand, patent, and accounts and profits accruing after January 1st, 1868, and received a bill of sale or agreement, (a copy whereof was annexed to, and formed part of the complaint,) from said defendant, and paid him therefor $10,000, partly in cash and partly by conveyance of real estate by way of mortgage, executed by the plaintiff, William R. Lansing, and bond accompanying the same. That in truth, and as the defendant then well knew, said representations were false, and said business had not realized a profit of $10,000 for the year 1868, nor had such profit accrued, nor had the defendant and his associates sold 2500 gross of jars, at a profit of $5 per gross, nor had they sold to exceed 1588 gross of jars, nor were the accounts upon the books of the defendant and his associates, accounts for goods actually

sold and delivered, but were deficient in at least the sum of $4340, as follows:

|  | On the books. | Deficiency. |
|---|---|---|
| F. Wetmore & Co., . . . | $4,800 | $2,390 45 |
| Talbot, Winslow & Co., . | 1,000 | 500 00 |
| J. D. Brown & Co., . . . | 1,428 | 900 00 |
| Tracy, Avery & Sturgis, . . | 1,050 | 550 00 |
|  |  | $4,340 45 |

Nor was there enough due to pay and meet the liabilities incurred by the plaintiffs in their purchase aforesaid, nor was there any arrangement between said Barnes and his associates with said Southwick & Reed, to carry on or extend any payment until the season of 1869, nor was the sum of $7000 all there was due or to grow due to them, said Southwick & Reed, within sixty days from the 17th day of July, 1868, but on the contrary, there was on that day, $23,000 due them from said Barnes and his associates. That by reason of the premises the plaintiffs were misled by the defendant to their damage, $10,000. Wherefore the plaintiffs demanded judgment for the damages sustained by them by reason of the premises, with costs.

The defendant, by his answer, admitted that he made the sale to the plaintiffs according to the terms of the instrument set out in the complaint; but denied that he made the representations to the plaintiffs alleged in the complaint, or any of them. And alleged that all the representations made to the plaintiffs by the defendant were true and correct; and that the books of account of the defendant and his associates were correct, and there was not, in fact, the deficiency alleged in the complaint, or any deficiency. And he denied each and every other allegation in the complaint.

On the trial, at the Monroe circuit, the plaintiffs offered to prove that the false representations alleged in the complaint had been made by Russell. The testimony was

objected to, and the objection overruled, and the evidence received. Evidence was then given of the statements made by Russell. The only authority of Russell to make such statements is found in his testimony. He testified that in 1867 and 1868 he was travelling agent for Coleman & Barnes, in the sale of the Spencer fruit jar; that in July, 1867, or 1868, he was employed by Coleman to find a purchaser for his interest in the property; and he procured the Lansings to purchase; communicating to them the fact that he had been employed by Coleman, though he did not state to them that he had been employed by Coleman to sell his interest in the business; that the facts in relation to his employment by Coleman to procure a sale of such interest were as follows: "I met Mr. Coleman in the Arcade, and he wanted to know if I didn't think I could find some one to purchase his interest in the jar, and I told him I thought likely, perhaps I could; and he said if I could he would make it right with me; I think I asked him what his price was, and he told me $10,000, and I asked what he would give me if I would find him a purchaser, and he said if I would find him a purchaser for $10,000 he would give me $2000 of it. I think a week or so after that I met Mr. Coleman at another place, at the Lager Beer Garden, on Clinton street, one evening, and he wanted to know if I had found any one to purchase then, and I told him I hadn't then, and some other conversation came up. He made another proposition to me then; he said if I found some one, that he would give me $3000 if he got $10,000, and if he only got $9000 I was to have only $2000." Russell subsequently made certain representations to the plaintiffs, in relation to the business, but Coleman was not informed that any representations had been made. Finally the parties met, and had a conversation, at which Russell was present. Certain statements were then made by Coleman respecting the extent and profitableness of the business,

Lansing v. Coleman.

amount of debts, &c.; at the close of which the plaintiffs bought a half interest in the patent, and a half interest in the right to manufacture and sell, and the contract mentioned was executed.

The plaintiffs gave evidence tending to prove the falsity of the representations made by Russell, as well as of those made by the defendant himself.

The jury found a verdict in favor of the plaintiffs, for $2557.09; and the court ordered the exceptions to be heard, in the first instance, at the general term.

*Geo. F. Danforth*, for the plaintiff.

I. The representations of Russell were admissible. 1. He was employed by the defendant to find a purchaser for the property in question. 2. And did procure the plaintiffs to buy the property of the defendant. 3. His agency was thus directly proven. Its scope was to find a purchaser for the property—for success in which, he was to be paid. 4. The representations were directly connected with the object of this agency, and for these reasons were admissible. They were within the scope of his agency, and part of the *res gestæ*. (2 *Cowen & Hill's Notes to Phill. Ev.* 181.) A broker authorized to sell may bind his principal by warranty. (*Andrews* v. *Kneeland*, 6 *Cowen*, 354. *Boorman* v. *Jenkins*, 12 *Wend.* 566. *Waring* v. *Mason*, 18 *id.* 425. *Nelson* v. *Cowing*, 6 *Hill*, 336.) An agent to sell sheep knew that they were diseased, and sold them without communicating the fact; the principal was held liable for the deceit. (*Jeffrey* v. *Bigelow*, 13 *Wend.* 518.) So he is liable for an agent's representations as to quality, relied upon to show fraud in the sale, the benefit of which was received by the principal. (*Welch* v. *Carter*, 1 *Wend.* 185, 190, 191. 1 *Pars. on Cont.* 62.) 2. The representations made by Russell were reiterated by Coleman. And every fact was established which was essential to make out the plaintiff's case. The defendant adopted and received the fruits of

the representations for his own use and benefit, and is thus directly within the principle upon which the following cases were decided: *Bennett* v. *Judson,* (21 *N. Y.* 238;) *Elwell* v. *Chamberlin,* (31 *id.* 611;) *Henry* v. *Root,* (33 *id.* 526;) viz: "These authorities rest upon the principle that when a party clothes another with authority to speak in his behalf, and indorses him to third persons as worthy of trust and confidence, those who are misled by the falsehood and fraud of the agent are entitled to impute it to the principal. The latter will not be permitted to retain the fruits of a transaction infected with fraud, whether the deceit, which he seeks to turn to his profit, was practiced by him or by his accredited agent. In such a case he cannot separate the legal from the illegal elements of the contract, and appropriate the advantages it secures, while he rejects the corrupt instrumentalities by which they were obtained." In these and like cases the duty rests upon the agent to communicate to the principal the means and instrumentalities employed by him in the prosecution of his agency; and the latter may very well be charged as one having received such information and voluntarily adopting the agent's acts and representations. (*Story on Agency,* § 140. 4 *Paige,* 127. 2 *Hill,* 461.)

II. A new trial should therefore be denied, and the judgment affirmed, with costs.

*J. C. Cochrane,* for the defendant.

I. Russell had no authority to sell the business, or make a contract or receive the money. He was only a drummer to find a purchaser. If he was an agent at all, it was with the most special and limited authority. He was simply to find a purchaser and bring him to Mr. Coleman. Then his duty was ended. He was not authorized and did not assume to do anything whatever for Coleman. The agency of Russell did not extend to anything connected with the sale. He was not employed to take any part in

Lansing *v.* Coleman.

the sale. We submit that Russell had no authority to make any representations whatever in regard to the property; that what he did say could form no part of the sale, and did not form any part of it; his statements, therefore, were clearly incompetent. If he had been authorized to make any contract with the purchaser which would bind Coleman, the case would be different.

II. New York merchants employ drummers to find purchasers. They are really the agents and servants of the parties employing them. Suppose a drummer finds a purchaser and makes representations in regard to the quality of the goods. He takes him to the store and the salesman makes a bargain, and sells a bill of merchandise. In an action for these goods, is it a good defense to show that the representations of the drummer were false? The simple answer is, that the drummer was not authorized to make the sale and did not pretend to make it. What he said, therefore, was no part of the sale. Or, suppose a party has a piece of real estate to sell, and applies to a broker to find a purchaser, and then the owner himself makes the sale. Is he liable for unauthorized statements made by the broker?

III. The agency of Russell was less than that of a drummer. Was it an agency at all? A drummer has regular employment in a continuing business. Russell had no employment. He was under no obligation whatever to Coleman. It was not his duty to make any effort to find a purchaser. He was not employed for that purpose. It was merely a matter of contract. Coleman simply said, if you find me a purchaser I will give you so much. Russell might do so or not. If he did, he would accept the proposition of Coleman. He would complete the contract on the instant. There would be no other employment or agency, whatever.

IV. If Russell made false representations to the plaintiffs, he did so upon his own responsibility. For these

representations, if the plaintiffs have any cause of action, it is against Russell and not against Coleman. This does not come within the class of cases where a party has been clothed with apparent authority, and makes representations which were not in fact authorized. In this case the plaintiffs did not act on the supposition that Russell was the agent of Coleman. Russell did not pretend to be an agent, and the plaintiffs did not receive his statements as such.

V. There was no ratification of the acts of Russell by Coleman. Coleman was not informed of any statements that Russell had made, and did not know that he had made any. The payment to Russell according to his contract, was therefore no ratification of what he had done beyond it. The receipt of the $10,000 was no ratification of any act of Russell. It was not the fruit of any bargain he had made. It was the sum owing by the terms of the contract made by Coleman himself. *Non constat*, he might have made the contract even if Russell had not introduced the plaintiffs. Had Russell made the contract as agent for the defendant, the reception of the money would have been a ratification of what Russell had done. But as Russell did not make the contract, or pretend to make it, the performance of the contract, by either party, could not be a ratification of an act by a stranger foreign to the contract. (*Coyle* v. *City of Brooklyn,* 53 *Barb.* 56. *Smith* v. *Tracy,* 36 *N. Y.* 79.) The fact that Coleman, at a time subsequent to the representations by Russell, and without knowing that they had been made, entered into a contract with the plaintiffs, was no ratification of the representations.

*By the Court,* TALCOTT, J. This is an action for fraudulent representations alleged to have been made by the defendant, on the sale to the plaintiffs of the defendant's interest in a copartnership engaged in the manufacture and sale of the Spencer fruit jars. In addition to the testimony concerning the statements made by the defendant

Lansing *v.* Coleman.

at the time of the sale, the plaintiffs were allowed, against the objection and exception of the defendant, to give in evidence certain representations made by one Russell to the plaintiffs, preliminarily to the negotiation between the plaintiffs and the defendant. The only connection between the defendant and Russell in reference to the matter, was, that the defendant had previously requested Russell to procure a purchaser for the property in question, and agreed, in case he did so, to give him a certain portion of the purchase money, if a purchaser was found at a certain price. There was no evidence of any representations by the defendant to Russell, or of any express authority to Russell to make any representations or statements, and no proof of any knowledge on the part of the defendant that any representations or statements had been made by Russell; nor was there any authority given to Russell to make a sale of the property.

Under these circumstances, we think the representations made by Russell were not admissible in evidence. Russell was not clothed with any real or apparent authority to make any representations on the subject. To hold that a person not authorized to make a sale, but simply to advertise the property for sale, and procure some one to negotiate with the owner, can make representations or warranties binding upon the owner, without his authority or knowledge, would be too dangerous. The well known office of such an agent is merely to initiate a negotiation, not to complete one. The parties proposing in such a case to purchase, are necessarily referred to the principal, for the actual negotiation, and there is no hardship in requiring, but on the contrary, common prudence, and justice to the vendor, would seem to demand, that the purchaser should go to him for the facts which are to influence the purchase. There was no ratification of any representations made by Russell in this case, as it does not appear that the defendant had any knowledge of, or

---

reason to suppose that any representations had been made. We think the case is within the principle laid down in *Smith* v. *Tracy*, (36 *N. Y.* 79.)

It is urged by the plaintiffs that the testimony on this subject was immaterial, inasmuch as it is claimed that the defendant himself was proved to have made the same representations at the time of the sale. We cannot see, however, that the jury may not, as they might under the ruling of the court, have based their verdict to some extent on the representations claimed to have been made by Russell.

A new trial must be granted, costs to abide the event.

[FOURTH DEPARTMENT, GENERAL TERM, at Buffalo, February 6, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]