VAN BRUNT, P. J., O'BRIEN, INGRAHAM and McLAUGHLIN, JJ., concurred.

Judgment modified as directed in opinion, and, as modified, affirmed, with costs to the respondent.

Order affirmed, with ten dollars costs and disbursements.

---

L. D. GARRETT COMPANY, Appellant, *v.* J. JENNINGS McCOMB, Respondent.

*Sale of the stock of an insurance company — liability of a director and stockholder who accepts an offer induced by fraudulent representations of a committee of the directors.*

Where an executive committee of the directors of an insurance company enter into negotiations for the sale of a majority of the stock of the insurance company to another corporation, and submit a proposition made by the latter corporation to each of the stockholders of the insurance company, a director of the insurance company who took no active part in its management or in the negotiations for the sale of its stock, but simply accepted the offer submitted to him by the executive committee, is not bound by false and fraudulent representations made by the executive committee to the purchasing corporation as to the condition of the insurance company.

APPEAL by the plaintiff, the L. D. Garrett Company, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 11th day of December, 1900, upon the decision of the court, rendered after a trial at the New York Special Term, dismissing the complaint upon the merits.

*Michael H. Cardozo*, for the appellant.

*George A. Strong*, for the respondent.

HATCH, J.:

This is an action in equity to set aside and rescind a sale of corporation stock made by the defendant to the plaintiff, and for the recovery of the purchase price, upon the ground that the purchase was induced by false and fraudulent representations as to the condition of the corporation issuing the stock.

The defendant was a stockholder and director of the Traders' Fire Insurance Company. In April, 1900, one of the directors and managers of the company called upon the president of the plaintiff and informed him that the directors of the Traders' Fire Insurance Company had determined to retire from business and reinsure its risks, and asked him to make an offer for its stock. It appears that the plaintiff was engaged in buying and selling insurance companies, and its president stated to the director of the insurance company that if the company could be purchased through the directors he would make an offer. A typewritten statement was given to the president of the plaintiff purporting to show the condition of the Traders' Insurance Company as of April 1, 1900, which statement was the basis of the negotiations afterwards had. The negotiations leading to the subsequent sale of stock were had with an executive committee of the directors of the insurance company, and resulted in a written offer to the stockholders of the company to the effect that if the plaintiff company could secure sixty-five per cent or more of the shares of the Traders' Fire Insurance Company's stock it would purchase the same upon terms therein specified. This proposition was submitted by the directors of the insurance company to each of its stockholders, the stockholders who accepted it notified the directors of their acceptance and the directors then transmitted to the plaintiff notice of the fact that the agreement had been consummated. Among those who accepted this proposition was the defendant, who owned and agreed to sell forty shares of the insurance company's stock at $25 a share, cash. He delivered his stock properly indorsed in blank to his own bank, by which it was delivered to the American Exchange Bank pursuant to the offer to purchase, and he received therefor the plaintiff's check for $1,000.

The defendant, while a director of the Traders' Company, took no active part in its management. He took no part in the negotiations for the sale of the stock or reinsurance of the risks of the

company. It does not appear that he knew anything about the transactions, except the offer to purchase, which he accepted.

There was not a particle of proof to show any relation of principal and agent between the committee who conducted the negotiations with the plaintiff and the defendant. So far as is disclosed by the record, the defendant acted for himself in accepting the offer which was made by the plaintiff, and the case is entirely barren of proof that the defendant when he accepted such offer had any knowledge of any prior negotiations with the executive committee, or other person, inducing the plaintiff to make it. As there is no proof of agency between the committee and the defendant, the latter cannot be bound by any representations made by the committee to the plaintiff, whether fraudulent or otherwise. It is claimed, however, that as the plaintiff was induced by the fraudulent representations of the committee to make the offer for the defendant's stock, the acceptance of such offer was a ratification of the acts and representations made by the committee, and that the defendant was bound by them. We have been referred to no authority holding that a person, by accepting a voluntary offer of a party for property, can be bound by the fraudulent representations of a third party respecting such property, not authorized by the seller and of which he had no knowledge. On the contrary, the law is distinctly otherwise. It is well settled that the representations of an agent authorized to advertise property for sale will not bind the seller for the reason that such authority does not clothe the agent with either real or apparent authority to make representations binding upon the seller. (*Lansing* v. *Coleman*, 58 Barb. 611; *Smith* v. *Tracy*, 36 N. Y. 79.) Under such circumstances, it may be that the agent making the representation would be liable. (*Argersinger* v. *Macnaughton*, 114 N. Y. 535.) But it is clear that where there is neither agency nor authority the seller is not liable or otherwise bound by any representations which have been made, even though the purchaser acted thereon. Under such circumstances, there is nothing upon which to base liability either by way of ratification or estoppel. (*Hamlin* v. *Sears*, 82 N. Y. 327.)

It is not at all necessary in the disposition of the present appeal that we determine whether the negotiations had with the executive committee resulting in the purchase of this stock were illegal or not,

or whether the plaintiff has any cause of action arising out of such transaction, or whether it is estopped as a wrongdoer from recovering back any money which has been paid. It is enough for present purposes to say that nothing which appears in the present record connects the defendant in any manner with the negotiations that are alleged to have led to the sale of his stock, nor is there anything connected with it which removes the case from an ordinary transaction of purchase and sale free of fraud or other infirmity.

This being the fact, it follows that the judgment should be affirmed, with costs.

VAN BRUNT, P. J., RUMSEY, PATTERSON and INGRAHAM, JJ., concurred.

Judgment affirmed, with costs.