## Loma Vista Development Co. v. Thomas W. Johnson et Ux.

No. A-81. Decided May 17, 1944.
Rehearing overruled June 21, 1944.
(180 S. W., 2d Series, 922)

*Johnson & Rogers* and *Nat L. Hardy,* all of San Antonio, for petitioner.

The majority opinion of the Court of Civil Appeals was in error in holding, as a matter of law, that the "undisputed facts and circumstances constituted Jones, the agent of petitioner, such an agent as to authorize him to bind petitioner in such matters as came within the scope of his particular agency," and in also holding that the representations made by such agent, who was only a salesman for the brokers who had the agency for said property, were within the scope of his authority, because Jones as such agent could not bind petitioner by making unauthorized statements concerning the condition of the property he was offering for sale. Citing cases used in the opinion.

*Elmer Ware Stahl and E. R. Sohn,* both of San Antonio, for respondents.

It was error for the Court of Civil Appeals to hold that the respondents failed to prove any legal measure of damages; that there was no evidence of the value of the property at the time of its purchase or that its actual value measured up to the representations of the agent; that the representation of value by the agent were only his opinion, and that his statements about the construction of the building were not actionable. Packard-Dallas, Inc., v. Carle, 163 S. W. (2d) 735; George v. Hesse, 100 Texas 44, 93 S. S. 107; Prideaux v. Roark, 291 S. W. 868; 27 C. J. 98.

MR. JUDGE BREWSTER of the Commission of Appeals delivered the opinion for the Court.

Thomas W. Johnson and his wife sued Loma Vista Development Company for damage for fraud in the sale of a dwelling house to them by the company. The trial court rendered judgment for the Johnsons on a jury verdict favorable to them. The Court of Civil Appeals at San Antonio reversed that judgment and remanded the cause on the ground that "there was no evidence establishing a legal measure of damages." Associate Justice Murray dissented, contending that the judgment should be rendered for the company. 177 S. W. 2d., 225, 228. Both sides sought a writ of error. The company's application was granted on its first point of error, hereinafter stated, and the Johnsons' application was then granted as a matter of course. Since our decision renders it unnecessary to discuss the latter application, we shall refer to the company as "petitioner" and to the Johnsons as "respondents."

Petitioner was engaged in the construction and sale of dwelling houses in the Loma Vista Addition to the City of San Antonio. When the house in question was about finished, petitioner listed it with Wm. P. McNeley Company, real estate brokers, for sale. Roy Jones was a salesman for these brokers. On January 28, 1940, respondents were in the Loma Vista area looking for a house to rent, when they noticed an "Open for Inspection" sign in front of the property in question. They decided to look at the house, and when they went in Jones introduced himself as the salesman in charge. Then it was, they allege, that Jones made false representations as to the manner of construction of the house and the materials used in it, upon which they claim they relied and which induced them to buy it. At the request of Jones, petitioner then gave the McNeley Company an exclusive listing of the property for a few days to give him full opportunity to negotiate with respondents, whom he regarded as likely prospects. Jones continued his efforts by going the next evening to the home of respondents, where, they say, he repeated the representations made to them the previous afternoon. On February 1 respondents signed an "earnest money agreement" to purchase the property, which showed the McNeley Company as agent and Jones as salesman. It was presented to petitioner, which signed and accepted it. The deed to respondents was delivered on March 19, and they moved in the next day.

Both Jones and one Saur, secretary of petitioner, testified that petitioner did not authorize Jones to make any representations concerning the house, and Saur swore that he gave no such

authorization to the McNeley Company. He also testified that he knew nothing about the alleged representations until after this suit was filed. Respondents in no manner controverted this testimony.

It is unnecessary to state all of Jones' alleged misrepresentations, as the Court of Civil Appeals held that only one was actionable, namely, that the foundation of the house "would give them (the Johnsons) no trouble and would stand up and that it was the best foundation for that particular type of house."

During the trial and while Johnson was testifying in his own behalf, he declined petitioner's offer to rescind the conveyance.

Petitioner's first point of error complains at the holding of the Court of Civil Appeals that Jones' unauthorized representations concerning the foundation of the house was within the scope of his agency for Loma Vista Development Company.

At the outset we are comfronted by respondents' contention that Jones was established as a general agent by the jury finding that he was an agent, under the trial court's definition of an agent as "one who undertakes to transact some business or to manage some affair for another, by the authority and on account of the latter, and to render an account of it." We see nothing in that definition inconsistent with special agency, therefore we fail to see how the jury finding can enlarge Jones' powers as they existed under the undisputed facts. It is a question of law, under what the facts show respecting the scope of the authority conferred upon him by petitioner, as to whether his agency was general or special. See Continental Oil Co. v. Baxter (Civ. App.), 59 S. W. 2d., 463, cited in 2 C. J. S., Agency, Sec. 101, p. 1238, note 29. It is clear to use that he was a special agent whose authority was limited to showing the property and finding a purchaser, and that he had no authority to consummate the sale. See Donigan v. Policek (Civ. App.), 34 S. W. 2d 375 (er dism.). That he claimed no power to bind petitioner, even by the earnest money contract, is shown by the fact that, after that instrument was executed by respondents, it was presented to, and accepted by, the petitioner. That a real estate broker ordinarily is only a special agent is the reason for the uniform decisions of this court that, in the absence of special agreement, he is entitled to his commission when he finds one who is ready, able and willing to buy on his principal's terms because he has done all that his employment requires or authorizes him to do.

In finding one who is so ready, able and willing to buy, does

the agent have implied authority to make representations as to the quality of the real estate? In discussing this proposition, one authority has said: "The question as to the authority of a broker to bind the owner of land as to representations which affect the value of the land, where it is sought to hold the innocent owner for damages on the ground of imputed fraud, is involved in much difficlty. The result of sustaining the authority often is to impose upon the owner a burden clearly beyond that which the agent had either actual or ostensible authority to to impose by any contract with the purchaser of the land. For example, the vendor may be held liable for damages based upon the differences between the actual value of the land and its value if it had been as the agent represented it, and certainly there can be no ground for saying that the agent had implied or ostensible authority thus to bind his principal." 57 A. L. R., Anno. 1, p. 112. In other words, with us, to hold an owner liable for the unauthorized and unknown misrepresentations of a broker employed merely to find a purchaser for real estate would be to hold him to the drastic penalty prescribed by Art. 4004, R. S., 1925. We do not believe that such a holding would comport with justice, because the seller certainly is as innocent as the buyer. Moreover, since the buyer must deal directly with the seller in closing the transaction, he has an opportunity, before he accepts the deed, to iquire of the seller as to the truth of any representations made by the broker. As said in Lansing v. Coleman (N. Y.), 58 Barb., 611, 619, "Common prudence and justice to the vendor would seem to demand that the purchaser should go to him for the facts which are to influence the purchaser."

■ Therefore, we hold that Jones had no implied authority to make representations with respect to the quality of the property sold; and that the petitioner is not liable under Art. 4004, supra, for damages for his misrepresentations, since they were not expressly authorized by petitioner and were not known to it before its deed was delivered to respondents. See Lay v. Midland Farms Co. (Civ. App.), 8 S. W. 2d., 230 (er. ref.). While we find no Texas case exactly in point, we do find that our holding is supported by a wealth of authority from other jurisdictions. Light v. Chandler Improvement Co., .3 Ariz., 101, 261 Pac. 969, 57 A. L. R., 107; Luff et al. v. Nevins, 106 N. J. Eq., 386, 150 Atl., 834; Friedman et al. v. New York Telephone Co., 256 N. Y., 392, 176 N. E., 543; Montague v. Bank for Savings in City of New York, 43 N. Y. S. 2d., 321; Tondro v. Cushman, 5 Wis., 279; Samson v. Beale et al., 27 Wash., 557, 68 Pac., 180; Gudmundson et al. v. Commercial Bank & Trust Co., et al., 138 Wash., 355, 244 Pac., 676; Ringer et al. v. Wilkin et ux, 32 Idaho, 330, 183 Pac., 986; Dellwo v. Peterson et al., 32 Idaho, 172, 180 Pac., 167;

Freyer v. McCord, 165 Pa., 539, 30 Atl., 1024; Mayo et al. v. Wahlgreen, 9 Colo., 506, 50 Pac., 40; Ellison v. Stockton et al., 185 Iowa, 979, 170, N. W., 435; Nupen et al. v. Pearce (C. C. A.), 235 Fed., 497; 2 C. J. S., Brokers, Sec. 136, p. 345. We believe these authorities present the sounder view, although there is authority to the contrary.

This holding is neither unjust nor harsh from the standpoint of the defrauded buyer. In the first place, he has a cause of action for damages for fraud against the agent who makes the fraudulent representations. And he has at least two remedies against the seller: (1) he may sue to rescind the contract, or (2) he may recoup his damages or prevent a recovery by the vender of the purchase price, on the ground of failure of consideration. In both instances the principle applied is that the seller will not be permitted to retain the fruits of the fraud of his agent on the ground that he did not know of, or authorize, the making of the fraudulent representations. 57 A. L. R., Anno. 1, p. 111. As stated by the Supreme Court of Colorado, in Mayo v. Wahlgreen, supra, "He may not be permitted to reap the harvest and refuse to pay for the seed." When either remedy is invoked the seller is informed of the fraud practiced by his agent; and if he resists a rescission of the contract or a recoupment of the buyer's damages, he is regarded as having ratified his agent's wrong, so the law forces him to make restitution. Donigan v. Polacek (Civ. App.), 85 S. W. 2d., 771 (er. dism.). Here the petitioner did not resist restitution; on the contrary, it offered a rescission, which respondents declined.

Reed v. Hester (Com. App.), 44 S. W. 2d., 1107; Martin v. Ince (Civ. App.), 148 S. W., 1178 (er. ref.); Sargent et al. v. Barnes (Civ. App.), 159 S. W., 366, and other cases relied on by respondents involve rescission or recoupment, which clearly distinguishes them from the case at bar. The text in 7 Tex. Jur., Sec. 13, p. 395, does seem to support respondents' position, but the five cases cited in the footnote do not support the text. Martin v. Ince and Sargent v. Barnes, supra, are two of them. The others are Richardson v. Wilson (Com. App.), 213 S. W., 613, wherein the principal was absent when the contract was executed and, by his express authorization, his name was signed to it by the agent; Kleine Bros. v. Gidcomb et al. (Civ. App.), 152 S. W. 462 (er. dism.), wherein the false representations were as to the probable presence of gold in the land, and the proof showed that the principals had armed their agent with essays and other data indicating the presence of valuable gold deposits in land adjoining that which they were trying to sell; and Farris v. Gilder (Civ.

App), 115 S. W. 645, wherein the false representation was as to the number of acres in the tract of land sold, and it appears that immediately after discovering the shortage, the buyer notified the seller of the shortage as well as of the representations with respect thereto, and the latter refused to make restitution.

The judgments of both courts below are reversed, and judgment is here rendered for the petitioner, Loma Vista Development Company.

Opinion adopted by the Supreme Court, May 17, 1944.

Rehearing overruled June 21, 1944.