## MECOM v. GALLAGHER et al.
### No. 4493.

Court of Civil Appeals of Texas. El Paso.
April 10, 1947.

Rehearing Denied May 1, 1947.

Neel, King & Rachal, Nat B. King, and F. J. Flores, all of Laredo, for appellant.

W. R. Blackshear and Gordon Gibson, both of Laredo, for appellees.

SUTTON, Justice.

This appeal is from the 49th District Court of Zapata County. The suit involves the title to certain described lands in Zapata County. On an appeal from an order on a plea of privilege the Waco Court held it was a suit for the recovery of the lands and to quiet the title thereto. Mecom v. Gallagher, et al., Tex.Civ.App., 192 S.W.2d 804.

On the verdict of a jury the trial court rendered judgment for the appellees, who were defendants below, and from that judgment the plaintiff has appealed.

Plaintiff based his suit upon the provisions of a grazing lease contract dated the 14th day of November, 1940, and to run for five years from December 1, 1940, wherein he was Lessee and fourteen "Owners" known as the Gutierrez heirs were Lessors. The provision relied upon for the recovery of the lands in paragraph "7" which reads as follows:

"7. Should the undersigned Owners, or any of the undersigned Owners, decide to sell said leased premises, or a portion thereof, or their interest in said premises, they agree to give tenant written notice of their desire to sell, which notice shall state consideration and terms upon which they are willing to sell, and name of purchaser, and the tenant herein shall have the preference right to purchase such land or interest therein for the consideration and upon the terms at which undersigned Owners may be willing to sell to a third person or persons. However, tenant must within thirty days advise such Owner or Owners of his willingness to purchase, subject to title, and such purchase must be consummated without any unreasonable delay on the part of said Tenant."

The record discloses that on or about December 21, 1943, the defendant, Gallagher, began negotiations for the purchase of the leased premises from the owners, the Gutierrez heirs. Gallagher entered into a purchase contract with the owners on January 31, 1944. The lands were conveyed by deed dated the 3rd day of July, 1944, by the owners to Gallagher.

Plaintiff's contention and first point of error is he was not given proper notice of the owners' desire to sell the leased premises and thus exercise his preference right to purchase the land under the terms of the lease, supra.

The facts are the lands were listed with Frederick P. Gonzalez, a real estate agent. Mr. Gonzalez prepared the following instrument:

"Laredo, Texas,
"Dec. 21st, 1943.

"Mr. Harvey Mecom,
   "Mecom Ranch,
   "Zapata County.

"Dear Sir:

"We the undersigned owners are using this means to inform you that we are willing to sell approximately 4563 acres more or less, out of Porciones Nos. 1 and 41, being and including all right, title, interest and ownership of Vendors herein and each of the Vendors herein, and to said porciones 1 and 41, including those certain three ranches known as 'Rancho San Rafael', 'Rancho Huizachito', and 'Rancho Chaveno' for the consideration of five dollars per acre. The buyer must be willing to pay cost of surveying above described property as well as cost of abstract and title examination. This letter constitutes notice to you of our willingness to sell above described property and you have thirty days to purchase said property or forfeit your option, as provided for in our lease agreement.

"Yours truly,

_____
_____
_____ ,"

On its date the instrument was delivered to Mr. Mecom by Mr. Gonzalez, who was in company with Carlos Gutierrez, one of the owners.

Plaintiff says the instrument is insufficient to constitute notice, because it does not comply with the provision of the lease in that it does not give the name of the purchaser nor the terms; because it was not signed by the owners and was given without their authority, and because at the time the alleged notice was given the owners had no bona fide offer for the land, which plaintiff says occurred on February 4, 1944, when all the owners had confirmed the written contract of sale with Gallagher. To these we are unable to agree. On the other hand, the interpretation of Mr. Gonzalez as embodied in the "notice" is reasonably accurate. The contract merely requires the owners to give notice when they decide to sell, which shall state the consideration and terms upon which they are willing to sell, and name of purchaser, and confers upon the plaintiff the preference right to purchase for the consideration and upon the terms which the owners may be willing to sell to a third person or persons. The contract does not provide if the owners decide to sell and have a prospective purchaser, or any other kind of purchaser, bona fide, contract purchaser, or what not, who proposes or has agreed in writing to purchase upon named terms, then the owners shall give the plaintiff written notice of their decision and desire to sell, the terms offered or contracted for by such prospective, bona fide, or otherwise described purchaser, and that he shall thereafter have the preference right to purchase upon such consideration and terms. As pointed out above it merely required them, if they decided to sell, to give plaintiff notice of their desire to sell, the consideration and terms upon which they were willing to sell (and name of purchaser) and gave plaintiff the right to purchase for the consideration and upon the terms the owners were willing to sell to a third person or persons, not terms offered or contracted for. The mere fact they had negotiations going on with Gallagher added nothing to the duty of the owners, nor did it confer any right on the plaintiff he did not have had a proper notice been given prior to the commencement of the negotiations. Had they decided to sell and given plaintiff notice of it and named a consideration and terms upon which they were willing to sell to a third party or parties and had he not acted within the specified time it is thought they would have been at perfect liberty to sell upon those terms. In short, it is an agreement to give notice in writing of a determination and desire to sell upon specified terms with a preference right and option to purchase upon those terms. The use of the word "purchaser" in the context of the provision is mere surplusage. We do not hold that the use of "purchaser" in a proper relationship could not mean "prospective purchaser" or the like notwithstanding its generally accepted use and meaning. The intention of the parties

is controlling, but when the terms of the instrument are unambiguous the intention must be determined from the instrument itself and if the terms give it a definite legal meaning the inquiry is concluded, and no intention at the time the contract was made, however discovered, can contradict or destroy the legal effect of the terms used. Reynolds et al. v. McMan Oil Co. et al., Tex.Com.App., 11 S.W.2d 778, at page 781, pars. 1, 2.

The question then arises, did the notice given under the circumstances meet the requirements of the provision? We think it did. It was in writing and identified the lands according to the description contained in the lease, and included "all right, title, interest and ownership" of each of the "Vendors" in said land and named the consideration and the terms upon which Gallagher purchased. It is true Mr. Gonzalez said he wrote it on his own initiative, but when he delivered it he was accompanied by Carlos Gutierrez, whom the plaintiff testified he had done all his trading with when he made the lease and purchased some cattle and so far as he was concerned he was the head of the family. The record further shows without dispute, when the notice was handed to Mr. Mecom he inquired who the purchaser was and was told, and asked for and immediately had a conference with Gallagher, in which Gonzalez and Carlos Gutierrez participated and others attended. The whole matter of the sale was discussed and other matters incident to the situation.

It was testified to and the jury found, at this conference Mecom stated to Gallagher and Carlos Gutierrez he would not be interested in buying on the terms, and that he, Mecom, was not willing to buy on the terms and did not give any notice of his intention to buy on them.

It is thought the notice in writing was not required to be signed since there was no provision to the effect that it must be.

We think it clear the parties originally interpreted the notice delivered on December 21, 1943, to be what was required under the provision of the lease. Mr. Mecom testified he discussed the matter

at the meeting on that date with Mr. Gallagher and ascertained the conditions of the sale; and discussed the matter of selling Gallagher the remaining period of the lease and made him a price. He addressed a letter to Carlos and Calixto on January 4, 1944, and said: "In reply to your notice of December 21, 1943, stating the price asked for the land that I have leased at present will come to see you about same when I get down to my ranch. I expect to be there inside a week." He came down and offered $4.50 per acre, but said there was in addition thereto a proposal to release them from the obligation to build and repair any fences. It is elementary that the interpretation of an instrument by the parties is entitled to great weight.

Mr. Gonzalez wrote the notice but, as heretofore pointed out, he and Carlos were together when it was delivered and apparently Carlos had as much to do with the presentation of it as did Gonzalez. But, if the notice were given by Gonzalez, that was sufficient. It is true, of course, as is held by the authorities everywhere, including the cases cited by appellant, Loma Vista Development Co. v. Johnson, 142 Tex. 686, 180 S.W.2d 922, 924; Reiser v. Jennings, Tex.Civ.App., 143 S.W. 2d 99; Eisenhower v. Brown, Tex.Civ. App., 4 S.W.2d 627; Elliott v. Brooks, Tex. Civ.App., 184 S.W.2d 929; that a real estate broker is a special agent with limited powers, and may generally exercise only such authority and power as is conferred upon him by his contract. But he undoubtedly has the authority, by implication, to do that which is necessary in effecting a sale. 12 C. J.S., Brokers, § 20 p. 58. It would have profited Gonzalez nothing, nor served the owners, to produce a buyer without giving the notice required under the provision. It was hardly worth while for Gonzalez to undertake to find one until the notice had been given.

To hold in this case the notice is insufficient under the plain terms of the contract and the facts and circumstances of the case would be to turn aside from the horse sense applications of law, which characterize the body of the law as a whole,

and indulge in pure technicalities. The price, without specification, implied cash and Mr. Mecom knew the terms.

Plaintiff complains of the failure of the trial court to submit requested special issues wherein the jury were asked if the conduct of the appellees, Gallagher and Alexander, in dealing with the owners of the property was such they were induced to deed it to Gallagher without giving plaintiff notice of the proposed sale. This point has been disposed of heretofore in the conclusion reached notice as required by the contract had been given.

He likewise makes a point on the failure of the court to submit a requested special issue as to his damages resulting from appellees' failure to repair fences as required by the lease. His pleading in this respect is:

"1. Pleading strictly in the alternative and only in the event plaintiff should not be entitled to the above described property under paragraph 7 of the said contract, then and in that event plaintiff says that on July 3, 1944, the said "owners" had failed to comply with the provisions of paragraph 5 of said contract and defendants became liable for the performance of the covenants to repair, place in good condition, and construct fences as provided in said paragraph 5.

"2. Defendants have failed and refused and still fail and refuse to comply with the obligations of paragraph 5 of said contract to plaintiffs damage in the sum of $3,000.-00".

The owners in paragraph 5 agreed forthwith to repair and place in good condition all existing fences and to construct such additional fences as may be necessary to cause said land to be completely enclosed with good and substantial fences of at least four barb strands with posts 15 feet apart, except that if plaintiff leased certain lands (which he did), there was not to be erected a new fence between that land and that of the owners. The only issue requested on this claimed item of damage was:

"How much, if any, was the rental value which plaintiff paid for the property in- volved herein diminished by reason of the failure of the defendants to place existing fences in good condition and to construct additional fences?

"Answer, the sum you find, if any, in dollars and cents."

We have examined the Statement of Facts as referred to at pages 62, 66, 81 and 83 and find no testimony that raises or that could support a favorable finding on the issue requested. At page 62 he was explaining how he arrived at the conclusion his offer of $4.50 per acre was equal to or better than the $5 paid by Gallagher and said 50¢ per acre would not take care of the remaining lease with the good grass there was on it, and that nobody could have done the fencing under his contract for fifty cents and the fifty cents was damages he had been put to. At page 66 he merely said it would cost approximately $250 per mile to build fences in that section of the country, but he did not know how much new fence had to be built. At pages 81 and 83 a witness testified to some distances along fences but not as to the condition of them. Mr. Mecom testified he did not know how much old fence or new was there; that there was some fair fence there but it was on the whole a very sorry fence. There was other testimony that the fences were built as required and the remaining fences were of four strands and in good repair.

Plaintiff presents his last point on claimed improper argument of appellees' counsel, and copies an excerpt in his brief. His Bill of Exceptions shows that after all the argument had been closed but before the jury retired plaintiff objected at follows:

"Mr. King: The plaintiff objects to the argument of counsel for the defendant, on the ground

"The Court: Object to what portion of it?

"Mr. King: I am going to say—That part of the argument wherein he vilifies the plaintiff's character, on the ground it is highly prejudicial. The second ground is that the argument as a whole indicates to

the jury the verdict on the basis of the way the Special Issues will be answered.

"The Court: I will overrule both of them because you do not point out what he said that you claim constitutes vilifying the witness.

"Mr. King: I will have my bill?

"The Court: You may have a bill of exceptions."

There is copied in the brief a part of the argument that was embodied in the bill. It is apparent that the objection was too general to be of any value and to become the basis of any error and the point is accordingly overruled.

We find no reversible error in the record and the judgment of the trial court is affirmed.

PRICE, Chief Justice (concurring).

I concur in the disposition made of this case, but not with everything said in Justice SUTTON'S opinion.

Plaintiff's substantial right was an option for 30 days to buy the property for what the Gutierrez heirs were willing to sell to a third party. This option was sufficiently definite to amount to a legal right. Pickrell v. Buckler, Tex.Civ.App., 293 S.W. 667; Id., 116 Tex. 567, 296 S.W. 1062. It is my thought the right to purchase was substantially accorded him. The notice served upon him might not have been in strict accord with the provisions of the lease. He never questioned the sufficiency of the notice served upon him. In response to same he asked and was accorded a conference with the prospective purchaser. At this conference he assured defendant Gallagher he was not interested in the property at $5.00 per acre. There is evidence that this was his attitude from being informed as to the name of the prospective purchaser and the price until after the deed to the purchaser. It is thought Mecom has no just cause to complain of the insufficiency of the notice under the lease unless it deprived him of the right to have an opportunity to purchase the property at $5 per acre. This right was accorded him and consistently he refused to exercise same, or at least there

is evidence to this effect. Gallagher, in substance, informed Mecom at this conference that he recognized his prior right to purchase, and inferentially he would not pursue the matter further if Mecom decided to purchase at the price of $5 per acre. Mecom assured him he was not interested in the land at $5 per acre, gave this assurance when he knew Gallagher wanted to buy at $5 per acre. His letter to the Gutierrez heirs dated January 22, 1944, disclaims any intention to buy at $5 an acre, said he would only give $4.50 and a release of an obligation to do some fencing on the leased premises.

In the charge some part of the factual elements of an estoppel en pais was submitted; it was found in substance that on December 21, 1943, Mecom advised Gallagher that he was not interested in the land as priced at $5 per acre, the amount Gallagher offered for the land; that Mecom by his conduct lead Gallagher to believe that he acquiesced in the sale. These findings are not the entire content of the pleaded defense for estoppel, but are important and essential elements of the defense. The evidence raised issues as to the existence of the other constituting elements. In view of the judgment it must be that a finding of the unsubmitted elements was made by the court in favor of Gallagher.

As has been said, if the Gutierrez heirs desired to sell, Mecom after notice had a prior right for thirty days to purchase at the price at which they were willing to sell. Knowing the Gutierrez heirs desired to sell, the price at which they desired to sell, the name of the purchaser, Mecom failed to indicate his intention to buy at the price set. In fact he lead the prospective purchaser to believe that he did not desire to purchase at the price set. He reasonably induced the belief on the part of Gallagher that he was abandoning his existent right to purchase at $5 an acre. In reasonable reliance on the words and acts of Mecom, Gallagher did purchase. He was accorded the right to purchase for thirty days.

From the verdict and from the inferences arising from the judgment all ele-

ments of an estoppel en pais were found in favor of Gallagher, Dickerson v. Colgrove, 100 U.S. 578, 25 L.Ed. 618; Hart v. Wilson, Tex.Com.App., 288 S.W. 133; Longbotham v. Ley, Tex.Civ.App., 47 S.W. 2d 1109, W.R.; Hammonds v. Flewellen, Tex.Civ.App., 48 S.W.2d 813; Richards v. Frick-Reid Supply Corporation, Tex.Civ. App., 160 S.W.2d 282.

It is thought unnecessary to determine whether the notice served upon Mecom on December 21, 1943, was in strict accord with the terms of the lease. He never questioned the sufficiency of same, after same was served upon him he made an offer to purchase the property at $4.50 per acre. The evidence justifies an attributed finding that at no time prior to the purchase by Gallagher did he offer to meet the terms of the proposed sale to Gallagher.

McGILL, Justice (concurring).

I concur in the disposition of this case, but since my views are not entirely in accord with those of Justice SUTTON and Chief Justice PRICE, I deem it advisable to state them.

Appellant has never been accorded the privilege of exercising his preference right to purchase in conformity with his lease. Paragraph 7 required the owners to give him written notice of their willingness to sell and gave him thirty days to exercise his preference right to purchase after receipt of such notice. The required notice is tantamount to an irrevocable offer to sell by the Gutierrez heirs. He has never received such notice. If he were attempting to force the heirs to sell on the strength of the notice of December 21, 1943, it could not be seriously contended that he could do so because such notice was not given by anyone authorized to bind them. The mere listing of the property for sale by one of the heirs with Gonzalez was insufficient to bind the other heirs. Gonzalez was only a special agent with authority to find a purchaser. He was without authority to bind the heirs to an irrevocable offer to sell. Loma Vista Development Co. v. Johnson, 142 Tex. 686, 180 S.W.2d 922. That Calixto Gutierrez had no such authority affirmatively appears from the escrow agreement of January 31, 1944, which required the signatures and acknowledgments of all of the heirs with the proviso that the vendee should have the right to declare it void and the return of the $2,000 deposited should each of the vendors fail to execute and acknowledge it. There is no evidence that Carlos Gutierrez had such authority. Therefore, appellant never received the required notice which would have been equivalent to an irrevocable offer to sell by the heirs for which he contracted. I think it quite clear that he never waived such notice. Waiver of such notice was an affirmative defense which was required to be set forth affirmatively if relied on. Rule 94, Texas Rules of Civil Procedure, and Commentaries Frankie, p. 43; Hodges v. Cole, Tex.Civ.App., 117 S.W.2d 822, 825; Reid v. Associated Employers, Lloyds, Tex.Civ. App., 164 S.W.2d 584, Writ Ref. Also, no issue of waiver of notice was submitted, and none requested; therefore appellees waived this ground of defense. Rule 279, R.C.P. It is apparent from the issues submitted that the trial court regarded the notice given sufficient as a matter of law, and the issues were submitted on that theory. The jury did not find that he waived his preference right. Their findings are: (1) On December 21, 1943, plaintiff did not express any dissatisfaction with the kind of notice that was being given him of the proposed purchaser, Gallagher, and price and terms under which the owners were willing to sell; (2) on December 21, 1943, plaintiff advised Gallagher and Carlos Gutierrez that he would not be interested in buying the land on those terms; (3) plaintiff was unwilling to buy the land on the terms proposed by Gallagher. He did not advise Gallagher or "Gutierrez" that he was willing to purchase within thirty days after he received the notice of December 21, 1943; (4) plaintiff by his conduct lead defendant Gallagher to believe that he, Mecom, acquiesced in, that is, was agreeable to the land being sold by the Gutierrez heirs to Gallagher instead of to himself, Mecom; (5) the owners did not deny plaintiff the right to purchase the land at the same price

and terms on which defendant Gallagher offered to purchase prior to the sale of the land to Gallagher; and (6) after December 21, 1943, plaintiff made an offer to Carlos Gutierrez to buy the land for the price of $4.50 per acre.

Appellant's letter of January 22, 1944, to all the heirs, cannot be construed as a waiver. In it he specifically called their attention to the fact that they had not given him the notice and stated what he would do should they do so. The common accepted definition of waiver has been said to be:

"An intentional release or relinquishment of a right that is at the time known to the party making it and is a voluntary act implying a purpose and intention to forego something of value or an advantage to which he had a legal right." Hodges **v.** Cole, 117 S.W.2d loc. cit. 825, 2nd col.

Under paragraph 7 of the lease appellant's right to purchase was made to depend upon the giving of the specified notice by the owners. Courreges v. System Freight Service, Tex.Civ.App., 152 S.W.2d 841. Until such notice was given his preference right was inchoate only. 35 C.J. p. 1039, Sec. 182; 51 C.J.S., Landlord and Tenant, § 81. It was not such an existing legal right which he was entitled to enforce as is generally accepted as the subject of a waiver. I think, however, that it was such a right as appellant could estop himself from asserting. In Edwards v. Dickson, 66 Tex. 613, 2 S.W. 718, Judge Gaines quoted and applied the rule stated by Pomeroy & Bigelow to the effect that the conduct creating an estoppel must be something which amounts to a representation or concealment of facts either present or past or represented to be so; a representation concerning something in the future is a mere statement of intention or opinion, and is insufficient to create an estoppel. However, from the jury's findings, especially Number (4) and the implied findings, by the court in support of the judgment it seems to me that appellant has estopped himself to assert his preference right. His statement to Gallagher that he was not interested in purchasing the land at the price that Gallagher was offering is more than an expression of intention or opinion, and under the jury's findings amounted to a representation that he would not assert his preference right, even though he had the privilege of doing so. Certainly such conduct on his part is incompatible with honesty and fair dealing.

On this theory I concur in the judgment of affirmance.

## On Rehearing.

SUTTON, Justice.

It must be apparent to the interested parties there was considerable difficulty in reaching a decision in this case. Between the time this writer's conclusions were written as embodied in the original opinion and the determination of the case his views underwent some changes with respect to some details of the opinion, and it is desired on this motion to set forth some of those conclusions.

Plaintiff in his petition, the orginal brief and in this motion predicates his claimed right to the lands in controversy on the proposition alone that he did not have proper notice as required by paragraph 7 of the lease contract and was because of that denied his preference right to purchase the lands. There is no claim that he did not know the facts of the proposed sale, or that he was denied or deprived of the right to purchase because of the lack of any information or knowledge. He attaches first and controlling importance to the notice provision of the paragraph, whereas, it is thought the primary and controlling provision is that which gives him the option or preference right to buy the lands upon the consideration and terms the Owners were willing to sell to a third person or persons. The provision for notice is merely incidental thereto. In any such option or preference right notice must be implied and had, otherwise there can be no opportunity to exercise the right. Plaintiff lived in Houston and the Owners some three hundred miles distant therefrom. Written notice was the most practical, safest and certain means of imparting the information desired and necessary of the Owners' decision to sell and the con-

sideration and terms of sale. Its primary purpose was to give the optionee the opportunity to exercise his option and preference right upon definite and indisputable terms.

It may be repeated that plaintiff had first hand knowledge on December 21, 1943, of every fact provided for in the provision. The jury specifically found Mecom advised Gallagher and Carlos Gutierrez on December 21, 1943, in substance that he would not be interested in buying on the Gallagher terms; that he was unwilling to buy upon the terms proposed by Gallagher; that by his conduct he led Gallagher to believe he acquiesced in and agreed the land might be sold to Gallagher instead of to himself, and that the Owners did not deny him the right to purchase upon the Gallagher terms prior to the sale to Gallagher. All such findings are overwhelmingly supported by both pleading and proof, much of which is undisputed and undenied. It was plaintiff's conduct that precludes him, whether it be called waiver or estoppel. It was what he did and not what it may be called that constitutes the thing. The authorities under many statements of fact make no distinction between waiver and estoppel. This may be why the learned trial court submitted the issues as he did.

The contract between Gallagher and the Owners is dated 40 days, not 30 days, after plaintiff had all the information he was entitled to under the literal interpretation contended for by him. This is not an instance where lands have been sold without knowledge or information on the part of the holder of an option, as is the case in the many cases cited. Had plaintiff not known of the determination of the Owners to sell and the consideration and terms of sale but had been kept in ignorance of it until the sale was consummated an entirely different situation would have been presented. But plaintiff knew all the facts from the very inception of the negotiations in December 1943, until the title was passed July 3, 1944. He had repeated opportunities to exercise his option but declined to do so, not because he did not know the terms and consideration and name of purchaser, but because he did know them, nor because he did not have notice of all the facts, but because he was unwilling to buy at the price. He suffered no injury because of lack of information and opportunity, because his information was timely, full and complete and his opportunity repeated, but if he has suffered injury it is because of his own neglect and unwillingness to buy at the price. It is axiomatic the law will not require the doing of a useless and futile thing, and had plaintiff had no written notice at all but had had only the information he obtained in his conference of December 21, 1943, and done as he did do, as admitted and found by the jury, there and subsequently he would have excused the giving of any sort of notice.

The notice provided for here is not unlike materially, it is thought, from many statutory notices, e. g., election notices. The purpose is to allow the opportunity to exercise the privilege or right conferred. In the instant case upon the terms and for the consideration the Owners had decided to sell for and met by Gallagher. In such case the failure to give notice is of no consequence unless the lack of notice results in injury. Hill v. Smithville Independent School Dist., Tex.Civ.App., 239 S.W. 987, affirmed Tex.Com.App., 251 S.W. 209 and cases cited. It was too late after the lapse of months to come in and say he had no notice of the consideration and terms of sale and no opportunity to purchase upon them because the provision for notice had not been literally complied with, because he had the advantage of every detail of the proposed sale and abundant opportunities to exercise his option.

The jury, as heretofore pointed out, found Mecom was not denied by the Owners the opportunity to buy upon the Gallagher terms. In other words, the jury found he had the opportunity. This was his primary right and under the finding and the authority of Hart v. Wilson, Tex. Com.App., 288 S.W. 133 he is precluded. This is all his contract entitled him to— the opportunity to buy upon the Gallagher terms—and if he had that opportunity and did not exercise it his contract is satisfied. Notice could have served no purpose, had

he had none, when he declined to exercise his option when given the opportunity. Plaintiff recognizes the fact his controlling and valuable right rests in the option provision rather than in the provision for notice and seeks to exercise it in the suit, and he says without notice as required by the contract. Certainly he had no more notice when he filed the suit on May 29, 1945, than he had on December 21, 1943. It was the determination to sell that matured his option. The notice could only bring to his attention that determination, and the consideration and terms, and the name of purchaser, and fix the time within which he must exercise it. This writer is unable to understand how one may say he has no notice of facts he actually knows. Knowledge is notice and vice versa.

The motion for rehearing should be overruled.