Affirmed and Opinion filed July 18, 2002









Affirmed
and Opinion filed July 18, 2002.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-01-00516-CV

____________

 

CHRISTOPHER COMEAUX, Appellant

 

V.

 

ADOLF D. SUDERMAN, III a/k/a ADOLF
SUDERMAN III AND MARGARET J. SUDERMAN a/k/a JANE SUDERMAN, INDIVIDUALLY AND
d/b/a BOLIVAR PROPERTIES, MARK D. MEIER AND MARK J. MEIER, INDIVIDUALLY AND
d/b/a COASTAL VENTURES, Appellees

 



 

On Appeal from the 212th District Court

Galveston County, Texas

Trial Court Cause No. 99CV1142

 



 

O P I N I O N

Appellant Christopher Comeaux appeals from a summary judgment
in favor of appellees on his claims for specific performance or damages arising
out of an alleged breach of a right of first refusal contained in a lease
agreement.  We affirm the judgment of the
trial court.








BACKGROUND

In May of 1988, Comeaux leased from the Sudermans[1]
slightly less than one acre of land on the Bolivar Peninsula in Galveston
County.  He used this property in
connection with the operation of a public fishing pier.  

The lease provided that, in the event Suderman received a
proposal to sell the leased premises, the sale was subject to Comeaux=s right of first refusal to purchase
the property.  Comeaux=s purchase would be on the same terms
and conditions as those offered by the prospective purchaser:

XIV.

LESSOR=S OPTION TO CANCEL IN THE EVENT OF SALE

In the event of a proposed sale of the entire leased
premises to a third party, Lessor shall have the right to terminate this lease
as of the effective date of the sale of the leased premises to a third party,
SUBJECT HOWEVER, to Lessee=s right of first refusal as provided in Article XV
below.

 

XV.

LESSEE=S OPTION TO PURCHASE PRIOR TO

LESSOR=S EXERCISE OF RIGHT OF CANCELLATION

 

Lessor shall notify Lessee in writing of the true and
complete terms and conditions of any proposed sale to a third party at least
ninety (90) days prior to the date of closing of such proposed sale, and Lessee
shall have the option, for a period of thirty (30) days from and after the
receipt of said notice, to purchase the leased premises upon the same terms and
conditions, by tendering the full amount of the proposed purchase price to
Lessor.








On March 30, 1997, Adolph Suderman notified Comeaux in
writing of a pending $350,000 cash offer for the leased premises and some
adjoining property to the east and west of the leased premises.  Suderman=s notice did not specify that the
total acreage to be sold was thirty-five acres. 
No other terms were provided, and no copy of an earnest money contract
was provided.  In the notice, Suderman
reminded Comeaux of his right of first refusal under the lease agreement and
the requirement that he exercise his right within thirty days.  Suderman also provided his telephone number
and that of his real estate agent, George Liberato, in the event Comeaux wanted
to discuss the purchase.

Comeaux received the notice and contacted Liberato.  Comeaux apparently assumed that the sale
involved twenty-two acres surrounding his property, but did not ask Liberato to
provide him with the specific terms and conditions of the sale, and did not
inquire into whether he could purchase only the leased premises.  Comeaux informed Liberato that he would not
exercise his option because he could not afford $350,000.  Comeaux had no further discussions regarding
the proposed sale with either Liberato or Suderman.  

Later, in June of 1997, Suderman sold the property to
appellees Mark D. Meier and Mark J. Meier, doing business as Coastal
Ventures.  Comeaux then began paying rent
to the Meiers.  During the time Comeaux
continued to occupy the leased premises, he never complained to either Suderman
or the Meiers that he had been wrongfully denied the opportunity to purchase
the leased premises.  Comeaux ultimately
abandoned the leased premises when a storm destroyed his fishing pier in the
fall of 1998. 

Comeaux subsequently filed suit against appellees, asserting
that he was entitled to either specific performance or damages because
appellees failed to comply with the terms of the right of first refusal in the
lease agreement and tortiously interfered with Comeaux=s contractual right to exercise the
right of first refusal.  Appellees moved
for summary judgment on the grounds that the proposed sale was not for the
leased premises only, Comeaux failed to tender an offer to purchase the leased
premises, and the Meiers did not tortiously interfere with the lease agreement;
appellees also asserted affirmative defenses of laches and unclean hands.  The trial court granted summary judgment in
favor of appellees on Comeaux=s claims without specifying the grounds relied upon.  Comeaux appeals from that summary judgment.








DISCUSSION

1.         Standard of
Review

When reviewing a summary judgment, we apply the following
well‑established rules:

(1)       the movant has the burden of showing that there is no genuine
issue of material fact and that it is entitled to judgment as a matter of law;

(2)       in deciding whether there is a disputed material fact issue
precluding summary judgment, evidence favorable to the nonmovant will be taken
as true;  and

(3)       every reasonable inference must be indulged in favor of the
nonmovant and any doubts must be resolved in favor of the nonmovant.  

American Tobacco Co., Inc. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Nixon v. Mr.
Property Management Co., 690 S.W.2d 546, 548‑49 (Tex.1985).

When the defendant moves for summary judgment, the motion is
properly granted only if the plaintiff cannot, as a matter of law, succeed upon
any theory pleaded.  Delgado v. Burns,
656 S.W.2d 428, 429 (Tex. 1983).  A
defendant's motion for summary judgment should be granted if he disproves at
least one essential element of each of the plaintiff's causes of action, or if
he establishes all the elements of an affirmative defense as a matter of law.  Grinnell, 951 S.W.2d at 425.  Once the movant establishes its right to
summary judgment as a matter of law, the burden shifts to the nonmovant to
offer any issue or evidence that would preclude summary judgment.  City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 (Tex. 1979).  

If a summary judgment is granted generally, without
specifying the reason, it will be upheld if any ground in the motion for
summary judgment can be sustained.  Carr
v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989);  Ross v. Arkwright Mut. Ins. Co., 892
S.W.2d 119, 127 (Tex. App.CHouston [14th Dist.] 1995, no writ). 




2.         Analysis of Issues on
Appeal

On appeal, Comeaux asserts that the trial court erred in
granting summary judgment  for the
following reasons:  (1) he was never
given notice that he could buy just the leased premises; (2) he was never given
the opportunity to purchase just the leased premises; (3) the notice he
received from Suderman did not comply with the terms of the lease agreement
because it did not reveal all of the terms and conditions of the sale and it
was received less than ninety days before the proposed closing date; (4) he was
entitled to either specific performance or damages; and (5) the appellees did
not meet their summary judgment burden with regard to their affirmative
defenses.  In response, the appellees
contend that Suderman was not required to give Comeaux notice or an opportunity
to purchase the leased premises because the sale was for more than just the
leased premises.  Further, appellees
urge, the notice Comeaux received sufficiently conveyed the terms of the sale,
and Comeaux declined to exercise his right of first refusal within the
thirty-day period provided in the lease agreement.  Additionally, appellees argue that Comeaux=s claims were barred by the
affirmative defenses of waiver, laches, and unclean hands.

We begin with Comeaux=s first three issues, all of which
relate to the sufficiency of  the notice
he received.  Comeaux claims that because
the written notice he received failed to offer him the opportunity to purchase
the leased premises only (rather than the entire thirty-five acre parcel) and
did not strictly comply with paragraph XV of the lease agreement, the right of
first refusal was never triggered. 
However, it is undisputed that Comeaux received notice of the proposed
sale, and had an opportunity to obtain all the terms and conditions of the
proposed sale and assert his rights.  As
we explain below, the record shows that Comeaux affirmatively declined to
exercise the right of first refusal.  We
hold that appellees are not liable to Comeaux for breach of contract and
tortious interference with his contractual rights.








a.         The right
of first refusal

A right of first refusal, as a preemptive right, requires the
property owner to first offer the property to the person holding the right of
first refusal at the stipulated price and terms in the event the owner decides
to sell the property.  Riley v.
Campeau Homes (Texas), Inc., 808 S.W.2d 184, 187 (Tex. App.CHouston [14th Dist.] 1991, writ dism=d by agmt.); Holland v. Fleming,
728 S.W.2d 820, 822 (Tex. App.CHouston [1st Dist.] 1987, writ ref=d n.r.e.).  Unlike an option contract, a right of first
refusal does not give the lessee the power to compel an unwilling owner to
sell.  Riley, 808 S.W.2d at 187; Sanchez
v. Dickinson, 551 S.W.2d 481, 484 (Tex. Civ. App.CSan Antonio 1977, no writ).  However, once an owner decides to sell, there
is an obligation to offer the holder of the right of first refusal the
opportunity to buy the property on the terms offered by a bona fide purchaser.  Riley, 808 S.W.2d at 187; Sanchez,
551 S.W.2d at 486. 

When one acquires an option to purchase property, the holder
of the option purchases the right to compel a sale of property on the stated
terms before the expiration of the option.  Riley, 808 S.W.2d at 188; White v.
Miller, 518 S.W.2d 383, 385 (Tex. Civ. App.CTyler 1974, writ dism=d). 
Option contracts have two components: 
(1) an underlying contract that is not binding until accepted; and (2) a
covenant to hold open to the optionee the opportunity to accept.  Riley, 808 S.W.2d at 188; Hott v.
Pearcy/Christon, Inc., 663 S.W.2d 851, 853 (Tex. App._Dallas 1983, writ ref=d n.r.e.).

A right of first refusal ripens into an option when the owner
elects to sell.  Riley, 808 S.W.2d
at 188; Holland, 728 S.W.2d at 822; Sanchez, 551 S.W.2d at
484.  When an owner is required to notify
the holder of a right of first refusal of the owner=s election to sell, the right matures
into an enforceable option when the owner gives the notice.  Riley, 808 S.W.2d at 188; Holland,
728 S.W.2d at 822‑23.  








Before the option can ripen into an enforceable contract of
sale, however, the holder of the option must manifest his acceptance.  Miller, 518 S.W.2d at 385; Hutcherson
v. Cronin, 426 S.W.2d 638, 641 (Tex. Civ. App.CTyler 1968, no writ).  Acceptance of an option must be unqualified,
unambiguous, and strictly in accordance with the terms of the agreement.  Crown Constr. Co., Inc. v. Huddleston,
961 S.W.2d 552, 558 (Tex. App.CSan Antonio 1997, no writ). 
If an option contract requires the option holder to give notice of his
intent to exercise the option, he must timely give this notice; the failure to
give it on time is fatal.  Miller,
518 S.W.2d at 386; Ducc Realty Co. v. Cox, 356 S.W.2d 807, 809 (Tex.
Civ. App.CWaco 1962, no writ).  Accordingly, a failure to exercise an option
according to its terms, including untimely or defective acceptance, is simply
ineffectual, and legally amounts to nothing more than a rejection.  Crown Constr. Co., 961 S.W.2d at
558.  If the lessee declines to purchase
the property, the owner may sell to anyone.  Riley, 808 S.W.2d at 187.

b.         Notice and
opportunity to purchase

With these principles in mind, we turn to the facts of the
present case.  Comeaux admits that he
received Suderman=s March 30, 1997 written notice of the proposed sale of the
leased premises and the additional property adjoining the leased premises.  Comeaux also admits that he spoke at some
point thereafter to George Liberato, Suderman=s real estate agent, regarding the
proposed sale.  Although it is unclear
whether the discussion between Comeaux and Liberato took place before the
expiration of the thirty-day period provided in the lease agreement for
exercising the right of first refusal, it is undisputed that Comeaux told
Liberato that he could not afford to match the Meiers= offer of $350,000.

At no time during Comeaux=s discussion did he inquire into any
of the specifics of the terms and conditions of the sale or contend that the
notice was insufficient.  Further, he did
not assert that he was entitled to purchase only the leased premises, and he
did not inquire into the possibility of doing so.  In fact, prior to the completion of the sale
to the Meiers, Comeaux admittedly failed to assert the right he now claims:








Q:        At any time prior to the sale, which I will represent to you
was in June of 1997, did you at any time contact either Mr. Liberato, Don
Suderman, or Margaret Suderman and suggest to them that you were entitled to
purchase only the leased portion of the premises?

A:        No, Sir.

Q:        Why didn=t you do that?

A:        Why didn=t I do that? Well, I don=t
know.  The land had been supposedly sold
about three or four times since I was leasing it, the land around me; and it
never did go through.  So I really wasn=t worried about it. 
That=s probably why.

Comeaux=s indifference to his rights and his
acquiescence to the sale without further inquiry  is evident from this exchange.  Nevertheless, Comeaux stresses that, because
Suderman=s notice did not include an offer to
sell only the leased premises and did not strictly comply with the terms of the
lease agreement, the right of first refusal was not triggered.[2]  Comeaux also contends that Mark D. Meier
admitted that Suderman=s written notice did not provide all the terms and conditions
of the earnest money contract.








However, we need not address whether Comeaux should have been
offered the opportunity to purchase only the leased premises, and whether the
notice was technically insufficient, because Comeaux had actual notice of the
proposed sale of the leased premises and an opportunity to purchase it, which
he declined.[3]  Here, Suderman prepared written notice to
Comeaux informing him of a pending sale of the leased premises and adjoining
property for $350,000.  Suderman also
reminded Comeaux of his right of first refusal, and invited him to contact
either Suderman or George Liberato, Suderman=s real estate agent, to discuss the
matter further.  

We find that Suderman=s notice to Comeaux, while not a
model of clarity, reasonably disclosed Suderman=s intention to sell the leased
premises and additional property to a third party for a total price of
$350,000.  When an owner makes a
reasonable disclosure of the terms of a proposed sale to another, the holder of
the right of first refusal has a duty to undertake a reasonable investigation
of any terms unclear to him.  Koch
Indus., Inc. v. Sun Co., Inc., 918 F.2d 1203, 1212 (5th Cir. 1990).  A right holder who fails to do so cannot
subsequently complain that he lacked sufficient information to make an informed
choice about whether to purchase the property that is subject to the right of
first refusal.  Id.  

Here, it is undisputed that Comeaux received the notice and
discussed the proposed sale with Liberato. 
At that time, Comeaux had an opportunity to learn the complete terms and
conditions of the proposed sale to the Meiers and to assert his right to
purchase the leased premises, but failed to do so.  Comeaux instead declined to assert his right
to purchase the lease premises.  Comeaux
does not contend that appellees deceived him or prevented him from obtaining
more information.  In fact, he testified
in deposition that he was made aware of the terms and conditions of the
proposed sale.  The only explanation
Comeaux gave for his indifference to his rights is that, based on past
experience, he did not think the sale would go through.  Further, Comeaux=s subsequent conduct in acquiescing
to the sale and paying rent to the Meiers was inconsistent with an intention to
purchase the property.  Given these
facts, we cannot agree with Comeaux that he was not given a reasonable
opportunity to purchase only the leased premises.








A similar conclusion was reached in Mecom v. Gallagher,
213 S.W.2d 304 (Tex. Civ. App.CEl Paso 1947, no writ), which also involved an allegation by
the holder of a right of first refusal that the seller=s notice was insufficient under the
terms of the lease agreement.  In that
case, the lessee, Mecom, was given written notice of a proposed sale of the
leased premises, and he discussed the terms and conditions of the sale with the
seller=s representatives before declining to
purchase on the same terms as the potential purchaser.  Id. at 306.  In its main opinion, the court of appeals
rejected Mecom=s argument that the  notice omitted certain terms required by the
lease agreement, reasoning that A[t]o hold in this case the notice is
insufficient under the plain terms of the contract and the facts and
circumstances of the case would be to turn aside from the horse sense
applications of law, which characterize the body of the law as a whole, and
indulge in pure technicalities.@  Id. at
306-07.  On rehearing, the court stressed
that the notice requirement was merely incidental to the primary and
controlling provision of the right of first refusal, which was the opportunity
to buy the property on the same terms and conditions as the owners would sell
to a prospective purchaser.  Id.
at 310-11.  The court further stated that
in those circumstances Anotice could have served no purpose, had he had none, when he
declined to exercise his option when given the opportunity.@ 
Id. at 311-12. 

Likewise, because Comeaux received notice and was given the
opportunity to exercise his right of first refusal, technical deficiencies in
the notice_or even no notice_cannot revive the right he declined.  We recognize that Mecom is
distinguishable because in that case the lessee availed himself of the
opportunity to obtain the complete terms and conditions of the proposed sale,
and the subject property was not part of a sale of a larger tract.  However, we do not think these distinctions
are significant to the resolution of the dispute here. 








Although Comeaux relies heavily on this Court=s opinion in Riley v. Campeau
Homes, we find that case distinguishable. 
In Riley, the owner of a number of condominium units in a
residential high rise entered into an agreement to sell all the units it owned
in the building.  Riley, 808
S.W.2d at 185.  The owner, in accordance
with the terms of a lease of one of the units, notified the lessee of the
proposed sale and the lessee=s right of first refusal to purchase the leased unit.  Id. at 186.  In response, the lessee took affirmative
steps to exercise its option by depositing money in escrow and returning a
sales contract to purchase the unit.  Id.
at 188-89.  The owner subsequently
notified the lessee that it had no intention of selling the unit to the lessee
separately from the sale of its other properties to the third party.  Id. at 186.  The court of appeals held that, under these
facts, summary judgment for the owner was improper.  Id. at 189.  Unlike the lessee in Riley, Comeaux
made no effort to exercise his option following his receipt of Suderman=s notice of the proposed sale and
Comeaux=s right of first refusal, and
ultimately declined any opportunity to purchase the leased premises.  Consequently, whether the Sudermans breached
the lease agreement with Comeaux by refusing to sell the leased premises to him
is not at issue as it was in Riley.








Comeaux also cites several cases in support of his conclusion
that the holder of a right of first refusal is not required to do anything
until the owner of the property conveys the full and complete terms of the
purchase offer to him.  See Gochman v.
Draper, 389 S.W.2d 571, 579 (Tex. Civ. App._Austin 1965), rev=d on other grounds, 400 S.W.2d 545 (Tex. 1966); Estes
v. Wilson, 682 S.W.2d 711, 716 (Tex. App.CFort Worth 1984, writ ref=d n.r.e.); Miller v. Compton,
185 S.W.2d 754, 756 (Tex. Civ. App._Eastland 1945, no writ).  We find these cases either distinguishable or
wholly inapplicable.  In Draper,
the holder of the right of first refusal was given no notice whatsoever and had
no knowledge of the sale of the leased premises.  Draper, 389 S.W.2d at 579.  In Estes v. Wilson, which involved
neither a right of first refusal nor insufficient notice, the court held that a
lessee was not entitled to exercise a purchase option contained in a
lease-purchase agreement when he forfeited his interest in the agreement by
failing to comply with provisions obligating him to pay taxes, retain the same
insurance with the same insurance carrier, and not sublease the property
without consent.  Estes, 682
S.W.2d at 714-16.  In the third case, Miller
v. Compton, the lessee was not even attempting to exercise the right of
first refusal contained in his lease agreement, but was seeking to avoid
liability for unpaid rent by arguing, unsuccessfully, that his obligation to
pay terminated with an undisclosed transfer of the property to the owner=s father.  Miller, 185 S.W.2d at 756, 758.  We find none of these cases instructive under
the present facts.

3.         Holdings

We hold that once Comeaux affirmatively declined to exercise
his right after receiving notice and an opportunity to assert his right to
purchase the leased premises, the option expired.  See Mecom, 213 S.W.2d at 311; Koch,
918 F.2d at 1213.  Because the option
expired, the Sudermans were free to sell to the Meiers, and therefore the
Sudermans could not have breached the lease agreement, and the Meiers could not
have tortiously interfered with the right of first refusal by purchasing the
property.  See Riley, 808 S.W.2d
at 187.[4]

Comeaux=s first three issues are therefore overruled, and we need not
address Comeaux=s fourth issue, in which he asserts that he is entitled to
alternative relief of specific performance or damages, or his fifth issue, in
which he contends that appellees did not meet their summary judgment burden
with regard to their affirmative defenses.

The judgment of the trial court is affirmed.

 

 

/s/        Wanda McKee Fowler

Justice

 

Judgment rendered
and Opinion filed July 18, 2002.

Panel consists of
Justices Hudson, Fowler, and Edelman.

Publish C Tex.
R. App. P. 47.3(b).











[1]  Specifically,
the parties to the contract were Comeaux, Adolph
D. Suderman, III and Margaret Jane Suderman individually and doing business as
Bolivar Properties. 





[2]  Comeaux
also contends that the notice was ineffective because (1) it did not inform him
that the proposed sale was for thirty-five acres, (2) it did not specifically
identify the acreage, and (3) it did not inform him of a provision in the
earnest money contract providing that, in the event the purchaser was unable to
obtain financing for the purchase within a specified time, the purchaser agreed
to proceed with the purchase of one of the two tracts, which included the
leased premises, for $125,000, and would obtain a right of first refusal on the
remaining tract for one year at a price of $225,000.  Indeed, it is Comeaux=s
position that in order to satisfy the Afull
and complete terms and conditions@
language of the lease agreement, the notice should have included a copy of the
earnest money contract.  However, Comeaux
does not explain how this additional information would have affected his
decision-making process, since he does not contend that he was entitled to
purchase the entire thirty-five acre parcel or the tract containing the leased
premises.  Indeed, he had no right or
obligation under the right of first refusal to purchase more than the leased premises.  See Hinds v. Madison, 424 S.W.2d 61,
64 (Tex. Civ. App.CSan Antonio 1967, writ ref=d
n.r.e.) (AWe do not see
how in any way lessee=s option or
preference right to purchase a portion of the property sought to be sold can be
enlarged to cover other lands owned by lessors, or can in any manner cover
anything except the property actually subject to the option.@).





[3]  Although it is
unnecessary to the disposition of this case, we disagree with appellees= contention that they were not required to give any
notice because the sale was for more than the leased premises.  A seller who has given a holder a preemptive
right cannot defeat that right by selling the subject matter of that right as
part of a larger transaction.  See
Riley, 808 S.W.2d at 189. 





[4]  Moreover,
it is undisputed that the lease agreement terminated upon the sale of the
property to the Meiers, and Comeaux did not seek to exercise his right of first
refusal until more than a year later, long after any purported right he had
under the lease agreement had expired.