**THOMPSON et al. v. AMERICAN POWER & LIGHT CO.**

**AMERICAN POWER & LIGHT CO. v. THOMPSON et al.**

No. 13157.

United States Court of Appeals
Fifth Circuit.

Nov. 30, 1951.

Rehearing Denied Jan. 7, 1952.

Webster Atwell, Dallas, Tex., for appellant.

Dan Moody, Austin, Tex., Lucian Touchstone, Dallas, Tex., J. B. Robertson, Austin, Tex., for appellee.

Before HUTCHESON, Chief Judge, and BORAH and STRUM, Circuit Judges.

HUTCHESON, Chief Judge.

Brought under Article 4004 of the Civil Statutes of Texas, upon allegations of "actionable fraud"[1] in connection with plaintiffs' purchase of the corporate stock and an income note of Texas Public Utilities Company for the principal sum of $2,200,000, bearing interest at 7 percent, with

---

1. "Actionable fraud in this State with regard to transactions in real estate or in stock in corporations * * * shall consist of * * * a false representation of a past or existing material fact * * * which is made as a material inducement to another party to enter into a contract." Art. 4004 Vernon's Texas Civil Statutes.

$600,000 accrued interest, the suit was for $350,000 "actual damages suffered", as measured by the statutory rule.[2]

As plaintiffs state them in their brief, the false representations of past or existing material facts, which induced plaintiffs to make the purchase, consisted: (1) in the appellee representing in the Utilities Corporation's balance sheet of March 31, 1947, that its property retirement reserve was $260,575.12, when, as a matter of fact, said property retirement reserve did not show that the total property depreciation that had been taken for tax purposes in its income tax returns was $1,157,124.02; (2) in said balance sheet understating the loss from past operations in setting up that its earned surplus (deficit) was $21,756.24, when in truth and in fact the account should have shown a loss of $918,305.14, with the result an overstatement of the assets by $896,548.90; and (3) in its fraudulently concealing the fact that the total property depreciation of the Utilities Corporation that had been taken for income tax purposes was $1,157,124.02.

The defendant, incorporated under the laws of Maine, moved to quash the service upon it and to dismiss the action, for want of jurisdiction over the person of defendant, and for improper venue.

Subject to these motions, defendant pleaded: that "no false representation of past or existing material facts had been pleaded"; and made complete and full denials that any fraudulent representations were made. In addition it alleged that plaintiff Thompson, who represented all the other plaintiffs in the purchase, was fully acquainted with the properties and their value; that he had full access to all the books and records of defendant; that he was not deceived or misled by the figures, set out in plaintiffs' complaint, which were precisely correct as made; and that defendant at no time made any false representations as to, or fraudulently concealed from

Thompson or the other plaintiffs, any existing fact, past or present.

The case was fully heard to a jury, and, at its conclusion, defendant moved for an instructed verdict. The court overruled the motion and submitted the case to the jury, which, failing to agree, was discharged.

Thereafter, within ten days after the jury was discharged, the defendant filed its motion, under Fed.Rules Civ.Proc. rule 50, 28 U.S.C.A., for judgment in accordance with its motion for a directed verdict, and the court entered judgment for the defendant as if the requested verdict had been directed.

Appealing from the judgment plaintiffs are here insisting that the evidence made out a case for a jury verdict and the judgment must be reversed.

Defendant, while cross-appealing on the question of jurisdiction and service of process, is here insisting that, if there was jurisdiction, the judgment was right and must be affirmed, because: (1) the transaction in this case involved neither a sale of land nor a stock promotion, and Article 4004, the invoked statute is not applicable; (2) plaintiffs concede, that they made a good trade, that the property is worth more than they paid for it, and that, therefore, if the statute is not applicable, plaintiffs have not been damaged, George v. Hesse, 100 Tex. 44, 93 S.W. 107, 8 L.R.A.,N.S., 804; and (3) if it is applicable to the purchase in question, no false representation of a past or existing material fact, as required by the statute, has been pleaded and proved.

Appellants, by reply brief and argument, vigorously contest these positions and urge upon us: that neither appellee's jurisdictional points nor those made on the merits are well taken; and that the judgment must be reversed and the cause remanded for a jury trial.

Whatever might have been said on the point in the earlier state of the law, we agree with appellants that, as the decisions now stand, defendant, under the undisputed

2. "All persons guilty of such fraud shall be liable to the person defrauded for all actual damages suffered, the rule of damages being the difference between the value of the property as represented or as it would have been worth had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract." Idem.

facts of record, was in the state sufficiently for the valid service upon it of the process in this cause, and the district judge was right in taking jurisdiction of it.

For the reasons hereafter stated, however, we agree with appellee that the judgment was rightly entered for defendant and that it must be affirmed.

■ Prior to the enactment of this statute, the measure of damages for fraud, in transactions which are now controlled by the statute, was the difference between the price paid, or property given in exchange, and the value of the property received. George v. Hesse, supra. The measure of damages for fraud, in transactions which are not controlled by Article 4004 is still the difference between the price paid, or the value of the property given in exchange, and the value of the property received. Morriss-Buick Co. v. Pondrom, 131 Tex. 98, 113 S.W.2d 889. Cf. Bryant v. Vaughn, Tex.Sup., 33 S.W.2d 729.

As appellee states the matter in its brief:

"It is apparent, from the terms of Art. 4004, that it is a penal[3] statute. The history of the Article demonstrates that fact; and the Supreme Court of Texas has so treated the statute. This statute, known as the Canales Bill, was enacted for the purpose of putting a stop to over-reaching people in the sale of lands in the Lower Rio Grande Valley of Texas by means of false representations and promises which were not fulfilled. It was broadened to include sales of stock in corporations and joint stock companies in order to reach oil stock promotions.

\*   \* ·   \*   \*   \*   \*

"It is settled law in Texas that penal statutes, such as Art. 4004, are strictly construed and that they will not be extended by implication or construction to cover cases that do not come squarely within their terms. (32 Tex.Jur. 754; and cases hereinafter cited.)"

So stating, appellee insists that, since this suit involves neither a sale of land nor a stock promotion, the statute is without application, and appellants have no case.

Appellants, in their brief, admit that the legislative history of the article and the purpose of its enactment is as stated by appellee. They deny, though, that the statute is penal and should be narrowly construed. They assert, on the contrary, that it is remedial and should be considered under Article 10,[4] Vernon's Texas Civil Statutes.

■ We find it unnecessary to determine whether the statute should be regarded as remedial or penal, should be liberally or strictly construed. We are convinced that the transaction here is within neither the letter nor the spirit of the statute, and that by no reasonable construction can it be brought within it.

It is not only that the statute speaks only in the disjunctive of "transactions in real estate or in stock in corporations or joint

3. In Loma Vista Development Co. v. Johnson, 142 Tex. 686, 180 S.W.2d 922, 924, the Supreme Court said:

"\* \* \* In other words, with us, to hold an owner liable for the unauthorized and unknown misrepresentations of a broker employed merely to find a purchaser for real estate would be to hold him to the drastic penalty prescribed by Art. 4004, R.S.1925. We do not believe that such a holding would comport with justice, because the seller certainly is as innocent as the buyer."

4. "Art. 10. The following rules shall govern in the construction of all civil statutory enactments:

\*   \*   \*   \*   \*

"6. In all interpretations, the court shall look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil and the remedy.

\*   \*   \*   \*   \*

"8. The rule of the common law that statutes in derogation thereof shall be strictly construed shall have no application to the Revised Statutes; but the said statutes shall constitute the law of this State respecting the subjects to which they relate; and the provisions thereof shall be liberally construed with a view to effect their objects and to promote justice."

See Taylor v. Iowa Park Gin Co., Tex.Civ. App., 199 S.W. 853; Cousins v. Sovereign Camp W. O. W., 120 Tex. 107, 35 S.W.2d 696; Railroad Commission v. Shell Oil Co., 146 Tex. 286, 206 S.W. 2d 235.

stock companies", and the transaction in question here was not such a transaction, that makes us so hold. It is that the transaction in this case for the purchase of the note and stock, though it did deal with stock, dealt with it in a completely subordinate and incidental way, the indebtedness represented by the note being in an amount so large as to deprive the stock of any substantial value, indeed to render it worthless. Cf. Southwest Natural Gas Co. v. Commissioner, 5 Cir., 189 F.2d 332; Bennett & Post v. Henderson, Tex.Civ.App., 280 S.W. 622; Ulrich v. Krueger, Tex.Civ. App., 272 S.W. 824. Appellee cites no cases to the contrary.

If, however, we could agree with appellants that the anomalous transaction in this case came, as to description of the property, within the ambit of the statute, this would be of no avail to them. For we are in no doubt that the record is wholly wanting in proof that defendant made a false representation here of either a past or existing material fact, as the statute uses those terms.

While the appellants do claim that the corporation balance sheet was made up in such a way as to deceive them, this is a mere conclusion unsupported by any fact. What the balance sheet showed was the truth, and if appellants were in fact misled by what it showed, appellee cannot be put at fault thereby, for appellants do not claim that they advised appellee, or that appellee otherwise knew of their misconception, or that, at any time or in any way, appellants asked for other or fuller information on that point.

Appellants and appellee were trading at arm's length. Appellants' representative Thompson knew the properties well. Nothing was concealed or held back from him or his associates. They had only to ask for it for the information to be forthcoming. It comes, therefore, with poor grace and less standing in law for appellants, after they had made a full investigation for themselves, to now claim that it was appellee's duty to furnish, and not appellants' to ask for, defendant's income tax returns over the years. If appellants wanted to see the returns, they should have asked for them, and they may not now claim that their failure to ask for and see these returns was a fraud perpetrated on them by appellee, entitling them to damages under the statute in the amount sued for.

In support of the claim that they bought the property under the mistaken belief thus induced, and were thereby damaged, appellants do not claim that the properties behind the note were, as properties, actually worth less than they paid for them, or even less than, after full examination, they determined them to be worth. They admit, on the contrary, that they made an excellent purchase. Their claim is simply and only that, because they unilaterally mistook the completely true property retirement statement of Utilities Corporation for the total deductions taken in its income tax returns over the years for depreciation of its properties, they have suffered a loss taxwise in respect of possible future income tax deductions which they mistakenly thought they would be entitled to.

The judgment was right. It is affirmed.