**AMERICAN TITLE INSURANCE COMPANY et al., Petitioners,**

v.

**L. Tonnett BYRD et al., Respondents.**

**No. A–10148.**

Supreme Court of Texas.

Dec. 2, 1964.

James R. Sloan & Patrick W. Thompson, L. Hamilton Lowe, Austin, for petitioner.

Kuykendall & Kuykendall, Austin, for respondent.

STEAKLEY, Justice.

Respondents, L. Tonnett Byrd and W. M. Day, plaintiffs below, entered into an escrow agreement to purchase what is referred to as the Bob Garrison ranch. It was agreed that they were to be furnished an Owner's Title Policy at the expense of the sellers, Robert D. Garrison, Jr., and wife. Petitioner, American Title Insurance Company of Miami, Florida (the other Petitioner is its Texas agent), issued its "Owner's Title Policy Commitment" to Respondents, the relevant provisions of which are copied in the

footnote.[1] The commitment omitted reference to two undivided mineral interests, a one-eighth and a three-sixteenths, which were outstanding in third parties. These mineral interests were disclosed in the previous deeds referred to in the property description employed in the commitment and were listed as exceptions in the title policy subsequently issued in favor of Respondents. Respondents sued Petitioners for damages under Article 4004, Revised Civil Statutes of Texas, 1925, based on the omission of the mineral interests from the title policy commitment.

Respondents state in their reply to the application for writ of error that "This suit was filed, tried and judgment was rendered as provided for under Article 4004 * * * Respondents had the right to sue for rescission or for damages * * *. [R]espondents did not seek rescission but exercised their right of election by suing for damages measured by Article 4004." The Court of Civil Appeals so treated the case.[2]

This appeal thus presents for decision the narrow question of whether a title insurance company is subject to an action for fraud within the provisions of Article 4004 under allegations that false representations have been made, upon which the purchaser relies, when particular defects in title are omitted from an owner's title policy commitment furnished by the title insurance company.

The trial court and the Court of Civil Appeals[2] held that Respondents' suit is maintainable under Article 4004. We hold that this statute has no application to a title insurance transaction and that Respondents' suit is within neither the letter nor the spirit of the statute. Article 4004, enacted in 1919, reads as follows:

"Actionable fraud in this State *with regard to transactions in real estate or in stock in corporations or joint stock companies* shall consist of either a false representation of a past or existing material fact, or false promise to do some act in the future which is made as a material inducement to an-

1. "February 1, 1962
"TO: L. Tonnett Byrd
and W. M. Day
In re:_____
"Gentlemen:
"In connection with an order placed with us for an Owner's Title Policy, we give you this preliminary report and Owner's Title Policy Commitment on the title to the following described property, to-wit:
"Being 601.1 acres of land out of the Enoch Moore, W. H. Haggard, Theodocia Carolina, Thos. B. Lee and J. Massey Surveys in Hays County, Texas, and being the same land conveyed to Ira A. Combs and wife, Bessie Combs, by deed of conveyance from W. E. Tombaugh and Sam Norwood, Individually and as Independent Executors of the Estate of Clementine Tombaugh, deceased, dated September 12, 1942, and thereafter conveyed by Ira A. Combs and wife, Bessie Combs, by deed of conveyance [to Robert D. Garrison, Jr. and wife, Bessie Combs, by deed of conveyance—sic] to Robert D. Garrison, Jr., and wife, Mary Burton Garrison, dated November 15, 1960 and recorded in Volume 184, Page 256–9, of the Deed Records of Hays County, Texas.

"We have approved the title to said Real Estate which is vested in Robert D. Garrison and wife, Mary Burton Garrison for the issuance of said Owner's Title Policy, subject to the following matters hereinafter set forth.
[Ten exceptions not here relevant are listed.]
"When the title to the said property becomes vested in the purchaser to our satisfaction (if the same is not herein shown to be already vested in him), free and clear, in our opinion, of all the defects, liens and incumbrances hereinbefore set out, and the Deed or other instruments have been properly executed, delivered and approved by us, and filed for record, then, provided nothing else shall have arisen subsequent to the date hereinbefore stated under Number 2 hereof affecting the title to said property, we hereby commit ourselves to issue to you an Owner's Title Insurance Policy on said property on the standard form prescribed by the Board of Insurance Commissioners then in use."

2. American Title Insurance Co. of Miami, Fla. v. Byrd, 376 S.W.2d 785.

other party to enter into a contract and but for which promise said party would not have entered into said contract. Whenever a promise thus made has not been complied with by the party making it within a reasonable time, it shall be presumed that it was falsely and fraudulently made, and the burden shall be on the party making it to show that it was made in good faith but was prevented from complying therewith by the act of God, the public enemy or by some equitable reason. All persons guilty of such fraud shall be liable to the person defrauded for all actual damages suffered, *the rule of damages being the difference between the value of the property as represented or as it would have been worth had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract.* All persons making the false representations or promises and all persons deriving the benefit of said fraud, shall be jointly and severally liable in actual damages, and in addition thereto, all persons wilfully making such false representations or promises or knowingly taking the advantage of said fraud shall be liable in exemplary damages to the persons defrauded in such amount as shall be assessed by the jury, not to exceed double the amount of the actual damages suffered." (Emphasis added.) [3]

▊▊▊▊ We point out that any right of action which Respondents may have *ex contractu,* or *ex delicto* apart from Article 4004, is not before us. As to "the actual

loss" measure of damages cf. George v. Hesse, 100 Tex. 44, 93 S.W. 107, 8 L.R.A., N.S., 804. Respondents sought to bring their suit under Article 4004 so as to recover the "loss of bargain" measure of damages provided by the statute, i.e., "the rule of damages being the difference between the value of the property as represented or as it would have been worth had the promise been fulfilled, and the actual value of the property in the condition it is delivered at the time of the contract."

Respondents cannot invoke Article 4004 and claim its advantages unless the transaction between them and Petitioner was a "transaction[s] in real estate or in stock in corporations or joint stock companies" to which, and only to which, Article 4004 applies. The transaction between Petitioner and Respondents was not a transaction in real estate or in stock; it was a transaction in title insurance which was incidental to the transaction in real estate between Respondents, as purchasers, and Robert D. Garrison, Jr., and wife, as sellers. Cf. Thompson v. American Power & Light Co., 5 Cir., 192 F.2d 651. The legislative intent to limit the scope of Article 4004 is clear by its terms, and is further evidenced by the recitation in the emergency clause of the Act of "The fact that there are now in this State a number of fraudulent land schemes, * * *." As relevant here, the statute changes the measure of damages with respect only to the real estate transaction and there is no basis in its provisions for an extension of the statute to include an ancillary title insurance transaction which itself is regulated pursuant to other legislative enactments.[4] In Loma Vista Development Co.

3. The statute has been held applicable only when a conveyance of the property has been made, and not where there is merely a contract to convey. Its provisions with respect to the presumption of fraud and the burden of proof have been held violative of the due process clause of the Constitution. Rawdon v. Garvie, 227 S.W.2d 261 (C.C.A.1950, no writ hist.). The rule of damages stated in the statute has been judicially criticized as "un-

tenable and without basis in reason." Seideman v. Callahan, 34 S.W.2d 406 (C.C.A.1930, writ dism.); Cf. Stuart v. Birdwell, 264 S.W.2d 452 (C.C.A.1954, no writ hist.), citing Morriss-Buick Co. v. Huss, 131 Tex. 102, 113 S.W.2d 839; Bennett & Post v. Henderson, 280 S.W. 622 (C.C.A.1925, no writ hist.).

4. Ch. 9, Art. 9.01 et seq., Insurance Code, Vol. 14, Vernon's Annotated Civil Statutes.

v. Johnson, 142 Tex. 686, 180 S.W.2d 922, this Court, in another context, spoke of the "drastic penalty prescribed by Art. 4004." In Westcliff Company v. Wall, 153 Tex. 271, 267 S.W.2d 544, this Court recognized that Article 4004 is penal in nature and must be strictly construed.

▮ The judgments of the Court of Civil Appeals and of the trial court are reversed, but in the interest of justice the case is ordered remanded to the trial court for another trial. Rule 505, Texas Rules of Civil Procedure; see Hicks v. Matthews, 153 Tex. 177, 266 S.W.2d 846, 850; City of San Antonio v. Pigeonhole Parking of Texas, 158 Tex. 318, 311 S.W.2d 218, 223, 73 A.L.R. 2d 640; Popperman v. Rest Haven Cemetery, Inc., 162 Tex. 255, 345 S.W.2d 715, 718.