**Mark D. MARSHALL, M.D., et al., Plaintiffs,**

v.

**QUINN–L EQUITIES, INC., et al., Defendants.**

Civ. A. Nos. 3–87–1384–H, 3–87–1589–H, 3–87–1873–H, 3–87–2113–H to 3–87–2133–H, 3–87–3068–H and 3–88–1153–H.

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 6, 1988.

Samuel L. Boyd, Eric G. Olsen, Leonard H. Plog II, Boyd & Adams, Dallas, Tex., for plaintiffs.

Robert W. Jordan, Sarah R. Saldana, Robb L. Voyles, Baker & Botts, Dallas, Tex., for defendants Jones, Walker, Waechter, Poitevant, Carrere and Denegre.

## MEMORANDUM OPINION AND ORDER

SANDERS, Acting Chief Judge.

Before the Court are Jones, Walker, Waechter, Poitevent, Carrere and Denegre's ("Jones Walker") Motion for Partial Summary Judgment, filed September 6, 1988; Plaintiffs' Response in Opposition and Renewed Motion for Extension of Time to Allow Discovery, filed October 11, 1988; and Jones Walker's Reply, filed October 19, 1988, together with supporting materials filed by the parties.

### Background

This litigation involves 26 separate actions, in which Jones Walker, a Louisiana general partnership of attorneys, is a defendant in 22. These actions regard 26 limited partnerships which were formed for the purpose of engaging in the acquisition, development, and management of commercial real estate properties located in Texas, Louisiana and Tennessee. Plaintiffs contend that the Defendants were involved in a comprehensive scheme to defraud them of their investments and have alleged violations of federal and state securities laws, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and state statutory and common law claims. These cases

have been consolidated in this Court for purpose of discovery.

Jones Walker has brought this Motion for Partial Summary Judgment with respect to the following claims:

(1) Sections 12(1) and 12(2) of the Securities Act of 1933;

(2) Section 15 of the Securities Act of 1933 and Section 20(a) of the Securities Exchange Act of 1934;

(3) Sections 33A(1), 33A(2) and 33F of the Texas Securities Act;

(4) Section 27.01 of the Texas Business and Commerce Code;

(5) Texas Deceptive Trade Practices— Consumer Protection Act ("DTPA"), Tex.Bus. & Com.Code § 17.41 *et seq.;*

(6) Negligence, Professional Liability, Negligent Misrepresentation;

(7) Breach of Fiduciary Duty and Constructive Fraud;

(8) Breach of Contract; and

(9) Claims by Plaintiffs who were not limited partners or who received their limited partnership interests by assignment.

Before addressing each of these issues, the Court first turns to Plaintiffs' Renewed Motion for Extension of Time to Allow Discovery pursuant to *Fed.R.Civ.P.* 56(f). Plaintiffs spend a good portion of their brief reiterating their argument that summary judgment is premature because they have been denied a meaningful opportunity for discovery of evidence within the possession of the Defendants. The Court has previously considered this issue and Plaintiffs' renewed arguments, which add nothing new to their position, do not persuade the Court to alter its ruling. *See* Court Order dated September 27, 1988. The submission of Wayne Swift's Affidavit, while enumerating the undisputed facts Jones Walker lists in its Motion for Partial Summary Judgment, fails to specifically show the Court what additional discovery by Plaintiffs will preclude summary judgment

with regard to these facts. *See Securities and Exchange Commission v. Spence & Green Chemical Co.,* 612 F.2d 896, 901 (5th Cir.1980), *cert. denied,* 449 U.S. 1082, 101 S.Ct. 866, 66 L.Ed.2d 806 (1981) ("nonmovant may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts, ..., particularly where, as here, ample time and opportunities for discovery have already elapsed.").

### Summary Judgment

■ Summary judgment is proper when the pleadings and evidence on file show that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P.* 56. The threshold inquiry is "whether ... there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 422, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The moving party need not submit evidence negating the nonmovant's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Rather, the burden is on the respondent to the motion to make a showing sufficient to establish each element as to which he will have the burden of proof at trial, provided that he has an adequate opportunity for discovery. *Id.* at 322–23, 106 S.Ct. at 2552–53.

1. *Sections 12(1) and 12(2) of the Securities Act of 1933*

Plaintiffs allege that Jones Walker, among others, owes them rescissionary damages under Section 12 of the 1933 Securities Act. 15 U.S.C. § 77*l. See* Plaintiffs' Third Amended Complaint at Paragraph 68.[1] Plaintiffs maintain that Jones Walker violated Section 12(1) because it was involved in offering and selling securities without the required registration.[2] *See id.*

---

**1.** Because the complaints in this litigation are almost identical, for ease of reference the Court's references to the Third Amended Complaint herein will be to Civil Action No. CA3–87–1384–H, filed on June 6, 1987.

**2.** Plaintiffs claiming to be limited partners in the limited partnerships that are the subjects of

at Paragraphs 55 and 68. Plaintiffs also claim that Jones Walker violated Section 12(2) because it was involved in offering and selling securities by means of a prospectus which contained misrepresentations and omissions of material facts. *See id.* at Paragraphs 65 and 68.

Jones Walker moves for summary judgment on the basis that Jones Walker does not qualify as a "seller" of securities under either Section 12(1) or 12(2). 15 U.S.C. § 77*o*. Jones Walker also asserts that the statute of limitations has expired on Plaintiffs' Section 12(1) claims and the majority of Plaintiffs' 12(2) claims pursuant to Section 13. 15 U.S.C. § 77m.

The United States Supreme Court recently addressed the issue of who may constitute a "seller" for purposes of Section 12(1). In *Pinter v. Dahl,* ⸺ U.S. ⸺, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988), the Supreme Court held that in addition to the owner who passes title or other interest in the security to the buyer for value (*id.* 108 S.Ct. at 2076), a seller is also one "who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner." *Id.* at 2078-79. Such a personal financial benefit may be established by a showing that the person anticipated sharing in the profits of the sale or receiving a brokerage commission. *Id.* at 2082.

In rejecting the Fifth Circuit's "substantial-factor test" [3] because it imposes liability on participants collateral to the offer or sale of securities, the Supreme Court narrowed its interpretation of "seller" based upon the plain language of the statute, stating that:

> [t]he deficiency of the substantial-factor test is that it divorces the analysis of seller status from any reference to the applicable statutory language and from any examination of § 12 in the context of the total statutory scheme.... Thus, although the substantial-factor test undoubtedly embraces persons who pass title and who solicit the purchase of unregistered securities as statutory sellers, the test also would extend § 12(1) liability to participants only remotely related to the relevant aspects of the sales transaction. *Indeed, it might expose securities professionals such as accountants and lawyers, whose involvement is only the performance of their professional services, to § 12(1) strict liability for rescission. The buyer does not, in any meaningful sense, 'purchas[e] the security from' such a person.*

*Id.* at 2080-81 (footnote omitted, emphasis added).

Jones Walker argues that its only role with respect to the limited partnerships was the rendition of limited legal services in connection with the offerings, which included assisting the general partner in the preparation of certain of the private placement memoranda, the limited partnership agreements and related documents, the issuance of certain tax opinions and securities opinions to the limited partnerships or third-party lenders, and the preparation of loan documents in connection with financing obtained by the limited partnerships from third party lenders. *See* Affidavit of Reilly L. Stonecipher attached to Jones Walker's Motion for Partial Summary Judgment at Paragraph 5. Jones Walker maintains that it (1) did not own the limited partnership interests or pass title or other interest therein to the Plaintiffs, (2) did not serve as a broker or dealer in connection with any of the limited partnership offerings, (3) did not receive a commission from the sale of any limited partnership interests, and (4) did not have any direct communication of any kind with any of the Plaintiffs in connection with their decisions to purchase limited partnership interests,

---

the following thirteen actions have not alleged violations of Section 12(1) of the Securities Act: CA3-87-2113-H; CA3-87-2115-H; CA3-87-2116-H; CA3-87-2118-H; CA3-87-2121-H; CA3-87-2123-H; CA3-87-2124-H; CA3-87-2128-H; CA3-87-2129-H; CA3-87-2130-H; CA3-87-2132-H; CA3-87-2133-H and CA3-88-1153-H.

**3.** This approach, grounded in tort doctrine, defines a Section 12 seller as one "whose participation in the buy-sell transaction is a substantial factor in causing the transaction to take place." *Pharo v. Smith,* 621 F.2d 656, 667 (5th Cir.1980).

and thus did not sell to or solicit purchases from any of the Plaintiffs. *See* Stonecipher Affidavit at Paragraph 3.

Plaintiffs respond by arguing that Jones Walker "assisted in the sales of the limited partnership interests," which included being available to talk to investors about investing in the limited partnerships, directly communicated to investors over the telephone and through their tax and securities opinions in connection with the investors' decisions to purchase limited partnership interests, and at least on one occasion, participated in a tax seminar directed at investors or potential investors. *See* Plaintiffs' Response at 27. In addition, Plaintiffs claim that because Jones Walker's remuneration was received, for the most part, in lump sum amounts in connection with each offering, and not on an hourly fee basis, it was akin to a commission for payment in connection with sales. The only summary judgment evidence upon which Plaintiffs rely is an affidavit by S. Mark Lovell ("Lovell") who syndicated the various limited partnerships in which plaintiffs invested. While Lovell states in his affidavit that Jones Walker spoke directly to investors and potential investors about the partnerships over the telephone, Lovell admittedly states that he is unable to identify any specific investors. *See* Affidavit of Lovell attached to Plaintiffs' Response at Paragraph L. To substantiate their argument that Jones Walker's fees were similar to receiving a commission, Plaintiffs point to Lovell's statements that: "There was an inherent risk in rendering ... [tax and securities] opinions for which Jones Walker needed to be compensated. For that reason, their fees in connection with particular offerings were not at all times tied to an hourly fee, but were, for the most part, lump sum amounts in connection with each offering." *See* Affidavit of Lovell at Paragraph K.

■ The Court considers that Lovell's Affidavit, while stating that Jones Walker was involved in preparing the private placement memoranda and participated in certain aspects of sales of the offerings, does not demonstrate that Jones Walker "solic-ited" any of the Plaintiffs. As *Pinter* teaches, something more is necessary. The Court does not find that any competent summary judgment evidence has been provided to show that Jones Walker had direct communications with investors or potential investors designed to persuade them to purchase the limited partnership interests in question. Preparation of tax and securities opinions for inclusion in the prospectuses does not amount, in the Court's opinion, to "direct communication" with investors so as to be solicitous. It is nothing more than the performance of professional services, which the Supreme Court in *Pinter* finds is not covered by Section 12(1)'s strict liability provisions. Furthermore, the Court considers that Plaintiffs' summary judgment evidence does not show that Jones Walker had the kind of financial stake in the securities offering which is envisioned by *Pinter*. That Jones Walker may have been paid lump sum payments at times for its legal services, or that they were traced to the proceeds of the offerings, is insufficient summary judgment evidence to establish that Jones Walker worked on commission. Even if the sales transactions in this case were unlawful, and the Court makes no such finding at this juncture, mere participation in such transactions does not impose Section 12 liability on participants collateral to the offer or sale.

The Fifth Circuit recently addressed the applicability of Section 12 to a law firm's role in a bond offering. In *Abell v. Potomac Insurance Co.*, 858 F.2d 1104 (5th Cir.1988), bond purchasers brought an action involving securities fraud, racketeering, and pendent state law claims against a developer (whose company issued the bonds), bond counsel, and others. The law firm was responsible for preparing the bond offering to satisfy the securities laws of over two dozen states. At trial, expert testimony revealed that the law firm had failed in its due diligence duties to properly investigate the bond transaction thus leading to the default on bond interest payments of the company which issued the bonds. A jury returned a verdict in favor of the bondholders on all counts, and de-

fendants appealed. On appeal, the Fifth Circuit extended *Pinter*'s definition of "seller" under Section 12(1) to Section 12(2), due to the identical "offers or sells" and "purchasing from" language in both sections and due to the Supreme Court's interpretation of the plain language of Section 12(1) in defining who a seller might be. The Court of Appeals reversed the judgment against the law firm concluding, after a thorough review of *Pinter's* Section 12 discussion, that strict liability under this section should not encompass the law firm's professional services.

The Court concludes that, like the law firm's role in *Abell,* Jones Walker's participation in the offering or sale of limited partnership interests did not amount to solicitation, and it was therefore not a "seller" under Section 12 of the 1933 Securities Act.

2. *Section 15 of the Securities Act of 1933 and Section 20(a) of the Securities Exchange Act of 1934*

Even though not a seller, a party may still be jointly and severally liable under Section 12 if the party is the seller's "controlling person." 15 U.S.C. § 77o. The same is true under Section 20(a) of the Securities Exchange Act of 1934 for a party who was not itself a violator of Section 10(b), but who was a violator's "controlling person." 15 U.S.C. § 78t(a).

Sections 15 and 20(a) were designed by Congress to impose liability on parties who employ and control corporations through which the parties attempt to evade liability for engaging in violations of the federal securities laws. *See Paul F. Newton & Co. v. Texas Commerce Bank,* 630 F.2d 1111, 1115–16 (5th Cir.1980).

In their motion, Jones Walker contends that it did not control the limited partnerships, their general partners or any of their affiliated companies or persons ("the Quinn–L Group"), had no ownership interest of any kind in any of these entities, nor did it serve as a director, officer, employee or hold any other management position. *See* Affidavit of Stonecipher at Paragraph 4. Jones Walker maintains that its only

role with respect to the limited partnerships, the general partners and the Quinn–L Group was the rendition of legal services in connection with the offerings (*see id.* at Paragraph 5), which does not amount to the kind of "control" envisioned by the federal securities laws.

Plaintiffs respond by conclusorily stating that their summary judgment evidence (which directs the Court to whole affidavits rather than to specific pages or paragraphs (*see* Plaintiffs' Response at 29–30, n. 32)), places Jones Walker's assertion that it is not a controlling person in dispute. Plaintiffs maintain that Jones Walker was in control with regard to any securities law compliance issues, including issues concerning disclosure and methods of sale.

The Securities and Exchange Commission has defined "control" as "... the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." 17 C.F.R. § 230.405 (1987); *see also G.A. Thompson & Co., Inc. v. Partridge,* 636 F.2d 945, 957–58 (5th Cir.1981). The Seventh Circuit in *Barker v. Henderson, Franklin, Starnes & Holt,* 797 F.2d 490 (7th Cir.1986) has held that a law firm's "ability to persuade and give counsel is not the same thing as 'control,' which almost always means the practical ability to *direct* the actions of the people who issue or sell the securities." *Id.* at 494.

■ The Court finds that not only is Plaintiffs' argument that Jones Walker is a "controlling person" unpersuasive, but that Plaintiffs' pleadings speak to the contrary. In Plaintiffs' Third Amended Complaint, they allege that "[t]he syndications were directed by the controlling person, Lovell, who generally owned one hundred percent (100%) of the related 'Quinn–L Companies' known as the Quinn–L Group." *See* Third Amended Complaint at Paragraph 45. In their Response, Plaintiffs state that "[t]he Defendants consist of various entities and individuals under the control and direction of an individual, Lovell." *See* Plaintiffs' Response at 5. Lovell, in his Affidavit,

provided by Plaintiffs as summary judgment evidence on their own behalf, states that every syndication of real estate by the Quinn–L Group was directed by him, he controlled the operations which sponsored the limited partnerships and their syndications, and that "[t]he limited partnerships had corporate general partners all of which had common ownership and were wholly owned and controlled by [him]." *See* Affidavit of Lovell at 21.

The Court finds that the summary judgment evidence on file shows only that Jones Walker performed legal services in connection with the offering and sale of the limited partnership interests. While Jones Walker, in its role as counsel, may have had an influence on decisions with respect to issues for which it had special knowledge and while certain officers or employees of the Quinn–L Group may have relied on Jones Walker's advice, this is insufficient to make Jones Walker a "control person" for purposes of Section 15 or Section 20(a) liability under the federal securities laws.[4] Plaintiffs' pleadings are replete with evidence that Jones Walker's role in the syndications was that of legal counsel, and Plaintiffs have not come forward with sufficient summary judgment evidence to show that Jones Walker controlled the conduct of corporate officers in their dealings with investors or were actively involved in the syndications' corporate affairs or the solicitation of business. *See Malik v. Universal Resources Corp.*, 425 F.Supp. 350, 365 n. 66 (S.D.Cal.1976); *see also Partridge*, 636 F.2d at 958.

### 3. *Sections 33A(1), 33A(2) and 33F of the Texas Securities Act*

In addition to their federal Section 12 claims, Plaintiffs allege similar claims against Jones Walker pursuant to Sections 33A(1) and 33A(2) of the Texas Securities Act. *See* Third Amended Complaint at Paragraph 68. Plaintiffs further allege

that Jones Walker is a "controlling person" pursuant to the provisions of Section 33F. *See* Third Amended Complaint at Paragraph 72.

For purposes of Sections 33A(1) and 33A(2), the phrase "person who offers or sells" is taken from Section 12 of the 1933 Securities Act and is intended to have the same meaning. *See* Comment—1977 Amendment by Committee on Securities and Investment Banking of the Section on Corporation, Banking and Business Law of the State Bar of Texas. Similarly, for purposes of Section 33F(1), a controlling person is used in the same sense as under the federal securities laws. *See id.* Under Section 33F(2), however, a person may also be jointly and severally liable for violating Section 33A if such person with the intent to deceive or defraud or with reckless disregard for the truth "materially aids" a seller, buyer, or issuer of securities.

The Court is of the opinion—contrary to Jones Walker's assertion that Plaintiffs have failed to allege that Jones Walker is liable under 33F(2) as an "aider and abettor" (*see* Jones Walker's Reply at 19 n. 8)—that Plaintiffs *have* sufficiently plead "aider and abettor" liability on the part of Jones Walker. *See* Third Amended Complaint at Paragraphs 26, 46, 50, 65, and 70. While the Court concludes that Jones Walker is not a "seller" pursuant to Sections 33A(1) and (2) or a "controlling person" pursuant to Section 33F(1), the Court reserves judgment at this time whether or not to grant summary judgment as to the Plaintiffs' Texas Securities Act claims against Jones Walker in order to afford Plaintiffs an opportunity to submit further briefing and summary judgment evidence to support their allegations regarding Jones Walker's liability under Section 33F(2). Plaintiffs are directed to make these submissions by *noon, December 19, 1988*. Jones Walker's reply thereto is due by *noon, December 29, 1988*.[5]

---

**4.** Since the Court concludes that Jones Walker is neither a "seller" under Sections 12(1) and 12(2) nor a "controlling person" under Section 15 of the Securities Act of 1933, it does not reach Jones Walker's statute of limitations challenge to Plaintiffs' Section 12 claims.

**5.** While Jones Walker has also raised statute of limitations issues in its motion with regard to Plaintiffs' state securities claims, the Court will reserve judgment as to this challenge pending its decision on whether to grant summary judgment on the Section 33F(2) claims.

#### 4. Section 27.01 of the Texas Business and Commerce Code

■ Plaintiffs' Second Claim for Relief alleges that Jones Walker violated Section 27.01 of the Texas Business and Commerce Code. *See* Third Amended Complaint at Section VI. Section 27.01 deals with fraud in real estate or stock in a corporation or joint stock company.

In its motion, Jones Walker argues that, as a matter of law, Section 27.01 is inapplicable to the transactions which are the subject of this lawsuit because the limited partnership interests do not constitute either real estate or stock in a corporation or joint stock company.

Plaintiffs do not appear to claim that the limited partnership interests are stock for purposes of this statute, but maintain instead, without directing the Court to any case law to support their contentions, that these interests constitute real estate because the principal objective of the limited partnerships was real estate acquisition or development.

The Court finds that Plaintiffs purchased limited partnership *interests*, not real estate. *See Life Insurance Company of Virginia v. Murray Investment Co.*, 646 F.2d 224, 227 n. 2 (5th Cir.1981), *modified on reh'g on other grounds*, 651 F.2d 1090 (1981), *cert. denied*, 454 U.S. 1163, 102 S.Ct. 1037, 71 L.Ed.2d 319 (1982). A limited partnership interest is personal property. *See* Tex.Rev.Civ.Stat.Ann. art. 6132a, § 19 (Vernon's 1970). The fact that the main objective in formulating the limited partnership was to acquire and develop real estate does not transform the interests purchased by the Plaintiffs into real property. Other courts have come to similar conclusions. *See Life Insurance Company of Virginia v. Murray Investment Co.*, 651 F.2d at 227 n. 2 (Section 27.01 is not applicable to the purchase of real estate notes); *American Title Insurance Company v. Byrd*, 384 S.W.2d 683, 685 (Tex.1964) (Vernon's Ann.Civ.Stat. art. 4004, the predecessor to Section 27.01, is not applicable to a transaction in title insurance, which was considered incidental to the transaction in real estate); *Greenway Bank & Trust v.*

*Smith*, 679 S.W.2d 592, 596–97 (Tex.App.— Houston 1984, writ ref'd n.r.e.) (Section 27.01 is not applicable to a guaranty secured by real estate or to money loaned for the purchase of real estate); *cf. Sunshine v. Mid-South Construction, Inc.*, 496 S.W.2d 708, 711 (Tex.Civ.App.—Dallas 1973, writ ref'd n.r.e.) (real estate licensing requirements are inapplicable to one who procures purchasers of interests in a limited partnership).

Accordingly, as a matter of law, Section 27.01 is inapplicable to Plaintiffs' purchase of limited partnership interests.

#### 5. Texas Deceptive Trade Practices— Consumer Protection Act

Plaintiffs' Fifth Claim for Relief is brought pursuant to the DTPA, Tex.Bus. & Com.Code § 17.41, *et seq. See* Third Amended Complaint at Section IX. Plaintiffs allege that they are "consumers" under the DTPA "in connection with the acquisition, directly or indirectly, of financing and management services from the Quinn–L Group in addition to their purchases, respectively of their security. They would show that they sought and acquired services from the various Defendants, and others." *Id.* at Paragraph 95.

Jones Walker claims that the summary judgment evidence shows that Plaintiffs are not "consumers," because they acquired securities, which constitute neither "goods" nor "services" under the DTPA. Jones Walker maintains that the provision of services which is incidental to the purchase of securities will not make the purchaser a consumer under the statute. Jones Walker also argues that Plaintiff investors were not clients of Jones Walker's and may therefore not bring a DTPA suit against them.

Plaintiffs respond that in certain instances securities are "goods" within the meaning of the DTPA, and that Texas case law has long held that one who seeks or acquires an interest in real estate for investment purposes is a "consumer" under the statute. Furthermore, Plaintiffs argue that Jones Walker provided "services" in the form of opinion letters regarding the

tax consequences of investing in the limited partnerships. They also maintain that the financing, construction, and management services in connection with the transactions, which were not incidental to the purpose of successful real estate development, need not have been provided by Jones Walker for Plaintiffs, as consumers, to maintain a DTPA cause of action against Jones Walker.

■ In order to establish consumer status under the DTPA, Plaintiffs have the burden of showing that (1) they acquired goods or services by purchase or lease and (2) that the goods or services purchased or leased must form the basis of the complaint. *Cameron v. Terrell & Garrett, Inc.,* 618 S.W.2d 535, 539 (Tex.1981). "Goods" are defined in the DTPA as "tangible chattels or real property purchased or leased for use." Tex.Bus. & Com.Code § 17.45(1). "Services" means work, labor, or service purchased or leased for use, including services furnished in connection with the sale or repair of goods. *Id.* Section 17.45(2).

■ The Court finds that the limited partnership interests involved in this litigation are the kind of instruments traditionally understood to be securities and intangibles. Such instruments are not covered by the definition of "goods" under the DTPA, and the Plaintiffs were therefore not "consumers" under the statute. *See Swenson v. Engelstad,* 626 F.2d 421, 428 (5th Cir. 1980) (stock certificates are not covered by the DTPA); *see also Portland Savings & Loan Association v. Bevil, Bresler & Schulman Government Securities, Inc.,* 619 S.W.2d 241, 245 (Tex.Civ.App.—Corpus Christi 1981, no writ).

The cases relied on by Plaintiffs involved the purchase of oil and gas interests which, while securities, were interests in real property and therefore constituted a "good" under the DTPA. In the case at bar, however, the purchase of limited partnership interests is not the purchase of a real estate interest (*see* Court's discussion under Section 4, *supra*) and the Court thus concludes that such a security is not a "good" under the DTPA.

■ The Court next turns to whether Plaintiffs have sufficiently shown under *Celotex* that they purchased or leased "services" to qualify them as "consumers" under the DTPA and if so, whether such services formed the basis of their complaints. The Texas Supreme Court has held that "[i]f, in the context of a transaction in goods or services, any person engages in an unconscionable course of action which adversely affects a consumer, that person is subject to liability under the DTPA." *Flenniken v. Longview Bank and Trust Co.,* 661 S.W.2d 705, 707 (Tex. 1983). This is so regardless of whether the person was the party furnishing the goods or services or was in privity with the consumer. *See id.* at 706–7; *Cameron,* 618 S.W.2d at 540–41. Services related to the sale of a security (which does not constitute a "good") may still be services covered by the DTPA when such services are also objectives of the transaction. *Federal Deposit Insurance Corp. v. Munn,* 804 F.2d 860, 865 (5th Cir.1986); *Nottingham v. General American Communications Corp.,* 811 F.2d 873, 878 (5th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 158, 98 L.Ed.2d 113 (1987). Thus, contrary to Jones Walker's assertions, Plaintiffs need not demonstrate that legal services were specifically rendered by Jones Walker to Plaintiffs or that Jones Walker and Plaintiffs were in privity, for Jones Walker to be liable to Plaintiffs under the DTPA.

■ The Court considers that the Plaintiffs have provided sufficient summary judgment evidence to demonstrate that Plaintiffs purchased services and are thus consumers under the DTPA. It is undisputed that Plaintiffs invested in the limited partnerships in question for the purpose of acquiring and operating commercial real estate for profit. *See* Affidavit of Lovell attached to Plaintiffs' Response at 1. The Quinn–L Group, in addition to sponsoring the limited partnerships, were responsible as general partners for providing a range of services on behalf of the limited partnerships in furtherance of their goals of successful real estate development. *See id.* at Paragraph 4 and Section 6.2 of Agreement

and Certificate of Limited Partnership of East Point Land Partners 1985 Limited Partnership attached to Plaintiffs' Response. The Court finds that even though an important objective of the transactions in this litigation was the exchange of intangibles (i.e. money for securities), the services to be performed by the general partner formed the basis of the Third Amended Complaint and were clearly an important objective of the transactions. In order to provide tax benefits and capital appreciation to the Plaintiffs, such services were a necessity, and thus can be considered a purchased service. *See First Federal Savings & Loan Association v. Ritenour*, 704 S.W.2d 895 (Tex.Civ.App.—Corpus Christi 1986, writ ref'd n.r.e.). This being the case, the Court finds that Plaintiffs have sufficiently demonstrated Jones Walker's involvement in the offerings and sale of limited partnership interests which they allege involved illegal activities for Plaintiffs to defeat summary judgment with regard to their DTPA claims.

### 6. *Negligence, Professional Liability and Negligent Misrepresentation*

In their Fourth, Twelfth and Thirteenth Claims for Relief, Plaintiffs bring causes of action for negligence, professional liability and negligent misrepresentation. *See* Third Amended Complaint at Sections VII, XVI, and XVII. Plaintiffs allege that "Jones Walker failed to exercise the standard of care expected of a reasonably prudent professional law firm in the same or similar circumstances" (*id.* at Paragraph 125), and that Jones Walker "failed to exer-

cise reasonable care or competence in obtaining and communicating the misleading information to Plaintiffs." *Id.* at Paragraph 129.

Jones Walker, in its motion, claims that its summary judgment evidence demonstrates that there was no attorney-client relationship between Jones Walker and Plaintiffs and thus Jones Walker owed no duty to Plaintiffs and cannot be liable to them for negligence, professional liability or negligent misrepresentation.

Plaintiffs respond that Jones Walker represented the limited partnerships and by "implication" also represented the investors, and argue that under certain circumstances an attorney-client relationship may be implied from the conduct of the parties. Plaintiffs maintain that even if Jones Walker was not Plaintiffs' counsel, Plaintiffs' claims for negligent misrepresentation against Jones Walker pursuant to Section 552 of the Restatement (Second) of Torts (1977)[6] are still valid.

■ Under Texas law, persons outside the attorney-client relationship have no cause of action for injuries they might sustain due to the attorney's failure to perform a duty owed to his client. *See Dickey v. Jansen*, 731 S.W.2d 581, 582–83 (Tex.Civ. App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *Berry v. Dodson, Nunley & Taylor, P.C.*, 717 S.W.2d 716, 718 (Tex.Civ. App.—San Antonio 1986, writ dism'd by agr.); *First Municipal Leasing Corp. v. Blankenship, Potts, Aikman, Hagin & Stewart*, 648 S.W.2d 410, 413 (Tex.Civ.App. —Dallas 1983, writ ref'd n.r.e.). This is true even under circumstances where the

---

**6.** Restatement (Second) of Torts § 552 provides:
Information Negligently Supplied for the Guidance of Others
(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.
(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.

attorney renders an opinion to his client on which he knows a third party will rely. *Id.*

■ The Court considers that the nature of the duty owed by Jones Walker to Plaintiffs with respect to Plaintiffs' negligence, professional liability and negligent misrepresentation claims is determined by whether or not an attorney-client relationship existed between them. The Court finds that Plaintiffs have wholly failed to present any summary judgment evidence to show that there was an attorney-client relationship between Jones Walker and any of the plaintiff investors in this litigation, implied or otherwise. Even if, as Plaintiffs argue, Jones Walker represented the limited partnerships, and the Court makes no such finding, this does not magically transform them into counsel for the investors, some of whom may not even have yet invested in the limited partnerships at the time Jones Walker provided its services. *See* Affidavit of Stonecipher at Paragraph 11. Plaintiffs have directed the Court to no summary judgment evidence showing that any Plaintiff was made to believe that Jones Walker was providing legal services to him or her with respect to the limited partnership offerings. For some reason, Plaintiffs quote the "Conflict of Interest" section in the Private Placement Memorandum for the Nashville Second Avenue 1984 Limited Partnership which specifically informs the investors of the common legal representation of the general partner and the limited partnership and that investors may require *independent legal representation* to protect their interests. *See* Plaintiffs' Response at 42 (emphasis added). This would appear to hurt rather than bolster Plaintiff's argument.

Thus, Plaintiffs have failed under ·*Celotex* to sufficiently demonstrate that an attorney-client relationship existed between them and Jones Walker. This being the case, Jones Walker owed no legal duty to Plaintiffs so as to make it liable to Plaintiffs for negligence (*see Abalos v. Oil Development Company of Texas,* 544 S.W.2d 627, 631 (Tex.1976)) or for professional liability (*see Cook v. Irion,* 409 S.W.2d 475 (Tex.Civ.App.—San Antonio 1966, no writ).

Furthermore, the Court finds Plaintiffs cannot maintain their negligent misrepresentation claims against Jones Walker, because Section 552 of the Restatement (Second) of Torts is not applicable to a law firm which renders legal services to someone other than plaintiffs. To hold otherwise would directly conflict with the outcome in *First Municipal,* 648 S.W.2d at 413, wherein the Texas Court of Appeals chose not to apply Section 552 to an attorney who issued an opinion letter to a client knowing that a specific third party might rely thereon.

In the absence of an attorney-client relationship between Plaintiffs and Jones Walker, Plaintiffs' negligence, professional liability, and negligent misrepresentation claims are not maintainable.

### 7. *Breach of Fiduciary Duty and Constructive Fraud*

Plaintiffs' Seventh and Ninth Claims for Relief allege that Jones Walker breached certain fiduciary duties and committed constructive fraud. *See* Third Amended Complaint at Sections XIII and XI. Plaintiffs state that Jones Walker, "in relationship to Plaintiffs, occupied a position of trust and confidence" (*id.* at Paragraph 1106) and "conducted [itself] in a manner which fell far below that required of a fiduciary in executing duties at the highest standard of care, trust and confidence." *Id.* at Paragraph 112.

Jones Walker moves for summary judgment on these claims, maintaining that Jones Walker had no relationship, let alone a fiduciary relationship, with the Plaintiffs. Its duty, Jones Walker argues, was to the general partner or arguably to the limited partnership, not to any of the individual limited partners who had no interest in the partnership at the time Jones Walker's services were rendered.

Plaintiffs respond by arguing that a fiduciary relationship did exist between themselves and Jones Walker as evidenced by the attorney-client relationship between them and/or the extended period of dealing with one another, including Plaintiffs' investment in multiple limited partnerships

and Jones Walker's representation of several of the Plaintiffs regarding subsequent tax audits of some of the limited partnerships. *See* Affidavit of Lloyd F. Dale attached to Plaintiffs' Response and Affidavits of Michael A. Ramsay, Grant A. Dove and Mark D. Marshall filed on February 29, 1980 in connection with Plaintiffs' Response in Opposition to Defendants' Motion to Dismiss for Improper Venue and in the Alternative Motion for Summary Judgment.

A fiduciary duty exists where "a special confidence is reposed in another who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence." *Texas Bank & Trust Co. v. Moore*, 595 S.W.2d 502, 507 (Tex.1980) (quoting *Lappas v. Barker*, 375 S.W.2d 248, 251 (Ky.1964)). While the traditional fiduciary duty may arise between an attorney and client, partners, and close family members, a fiduciary relationship may also arise in situations where there have been dealings between the parties for such a period of time that one party is justified in relying on the actions or words of another to act in his or her best interest. *Blue Bell v. Peat, Marwick, Mitchell & Co.*, 715 S.W. 2d 408, 416 (Tex.Civ.App.–Dallas 1986, writ ref'd n.r.e.). "Mere subjective trust, however, is not enough to transform arms-length dealing into a fiduciary relationship." *Id.; see also Thigpen v. Locke*, 363 S.W.2d 247, 253 (Tex.1963).

The Court concludes that there was neither an attorney-client relationship (*see* Court's discussion under Section 6, *supra*) nor the kind of dealings over time between Jones Walker and Plaintiffs which would justify the type of trust or reliance necessary to establish the existence of a fiduciary relationship. That it may have been Plaintiffs' belief that Jones Walker was the law firm for the partnership (*see* Plaintiffs' response to Interrogatory No. 25, Exhibit B attached to Jones Walker's Motion), does not make it so. Potential investors were informed in the private placement memorandums that they should not construe the contents of the memoran-

dums as legal advice and should, in fact, consult independent counsel's advice.

The only summary judgment evidence provided by Plaintiffs with regard to this claim involves the submission of affidavits by four Plaintiffs which state that they were being represented by Jones Walker in conjunction with Internal Revenue Service tax audits of the DeMoss–Pilcher Limited Partnership. The Court finds that the isolated representation of four Plaintiffs and one limited partnership, involving a matter which is not the subject of this lawsuit, is not sufficient to defeat summary judgment on the breach of fiduciary duty claim.

Furthermore, without a finding that a fiduciary relationship existed between Jones Walker and Plaintiffs, Plaintiffs' constructive fraud claim must also fail. *See Thames v. Johnson*, 614 S.W.2d 612, 614 (Tex.Civ.App.—Texarkana 1981, no writ).

### 8. *Breach of Contract*

Plaintiffs' Eighth Claim for Relief is based on breach of contract. *See* Third Amended Complaint at Section XII. They allege that they have "performed their conditions precedent until such time that they became aware of Defendants' unlawful conduct. Plaintiffs are excused, by law, from any further performance by the Defendants' breaches of their obligations in the Offering and their obligations of law." *Id.* at Paragraph 110.

Jones Walker argues in its summary judgment motion that there was no contract or agreement of any kind with any of the Plaintiffs. Plaintiffs respond that an implied contract existed between themselves and Jones Walker, such contract arising because "Jones Walker, through a fraudulent conduct, has obtained monies from Plaintiffs." *See* Plaintiffs' Response at 57.

While citing case law which, for the most part, is inapplicable to the facts of this case, Plaintiffs direct the Court to absolutely no summary judgment evidence to establish any elements of an implied contract between themselves and Jones Walker. Furthermore, Plaintiffs give no indication

as to what "conditions precedent" they performed in favor of Defendants or specifically what Jones Walker's role was in the breach. Thus, the Court finds nothing to preclude summary judgment regarding Plaintiffs' breach of contract claims.

### 9. *Standing*

Finally, Jones Walker moves for summary judgment against the following Plaintiffs who it claims were not limited partners in the limited partnerships which form the basis of the following actions:

| | |
|---|---|
| Barbe, E.D. | CA3–87–2123–H and CA3–87–2128–H |
| Bowen, B. | CA3–87–1873–H and CA3–87–2123–H |
| Bowen Investments | CA3–87–1589–H |
| Cummins, M.A. | CA3–87–2127–H |
| Dahl, E.V. | CA3–87–2128–H |
| Domingue, E.L. | CA3–87–2113–H and CA3–87–2121–H |
| Edgerton, D.G. | CA3–87–2124–H |
| Gripon, E.B. | CA3–87–2121–H |
| Jordan, A.B. | CA3–87–2113–H |
| Landry, R.L. | CA3–87–2113–H and CA3–87–2124–H |
| Louis, E.E. | CA3–87–2113–H |
| Maraist, D.V. | CA3–87–2113–H |
| McReynolds, G.W. | CA3–87–2128–H |
| Moss, G.W. | CA3–87–2113–H |
| Sandifer, W.D. | CA3–87–3068–H |
| Sandland, W.C. | CA3–87–2128–H |
| Sirbasku, David | CA3–87–2113–H |
| Sirbasku, Donna | CA3–87–2113–H |
| Tratras, N.G. | CA3–87–1873–H |

Jones Walker bases these contentions for the most part on statements by Lovell, that these particular individuals were not investors in the limited partnerships which are the subject of the above lawsuits. *See* Affidavit of Lovell attached to Jones Walker's summary judgment motion at Paragraphs 10, 11, 12, 14, 16, 19, 20, and 24; Deposition of Michael Alan Cummins at 47, 74, and 87. In their Response, Plaintiffs agree that E.D. Barbe should be dismissed from CA3–87–2128–H; that Bowen Investments should be dismissed from CA3–87–1589–H; and that Nick G. Tratras should be dismissed from CA3–87–1873–H.[7] Plaintiffs correctly state that W.D. Sandifer has already been dismissed in CA3–87–

3068–H. *See* Agreed Order filed September 23, 1988. With regard to the remaining Plaintiffs, Plaintiffs state that due to resyndications of their limited partnerships, these Plaintiffs are now creditors and are still owed monies from promissory notes generated by the sale of their limited partnership interests.

Jones Walker further argues, based once again on the affidavit of Lovell (*see id.* at Paragraphs 12, 14, 20, 24, and 25), that the following Plaintiffs purchased their interest from other limited partners subsequent to the offerings, rather than as a result of the limited partnership offerings and, as assignees, are not entitled to maintain claims against Jones Walker:

| | |
|---|---|
| Barbe, L.C. | CA3–87–2128–H |
| Barrett, W.J. | CA3–87–1873–H |
| Caldwell, C.B. | CA3–87–2124–H and CA3–87–3068–H |
| Louis, E.E. | CA3–87–2131–H |

The Court considers that it will reserve judgment on this part of Jones Walker's summary judgment motion, and directs Jones Walker to more fully brief these standing issues with regard to those causes of action brought by the above Plaintiffs in the above lawsuits which are now remaining in light of this memorandum opinion and order. Jones Walker is directed to submit this brief by *noon, December 19, 1988.* Plaintiffs' response thereto is due by *noon, December 29, 1988.*

### *Conclusion*

Based on the foregoing, the Court concludes as follows:

1. Plaintiffs' Renewed Motion for Extension of Time to allow for further discovery under *Fed.R.Civ.P.* 56(f) is DENIED;

2. Jones Walker's Motion for Summary Judgment as to Plaintiffs' Sections 12(1) and 12(2) claims is GRANTED;

3. Jones Walker is not a "controlling person" for purposes of Section 20(a) of the Securities Exchange Act of 1934;

4. Jones Walker's Motion for Summary Judgment as to Plaintiffs' Section

---

7. Nick G. Tratras has subsequently moved for dismissal of his claims in CA3–87–1873–H, which motion was granted. *See* Agreed Order filed November 29, 1988.

27.01 of the Texas Business and Commerce Code claims is GRANTED;

5. Jones Walker's Motion for Summary Judgment as to Plaintiffs' DTPA claims is DENIED;

6. Jones Walker's Motion for Summary Judgment as to Plaintiffs' Negligence, Professional Liability and Negligent Misrepresentation claims is GRANTED;

7. Jones Walker's Motion for Summary Judgment as to Plaintiffs' Breach of Fiduciary Duty and Constructive Fraud claims is GRANTED;

8. Jones Walker's Motion for Summary Judgment as to Plaintiffs' Breach of Contract claim is GRANTED; and

9. The following Plaintiffs are DISMISSED by agreement from the following actions:

| | |
|---|---|
| E.D. Barbe | CA3–87–2128–H |
| Bowen Investments | CA3–87–1589–H |

The Court reserves judgment regarding Jones Walker's Motion for Summary Judgment as to Plaintiffs' Texas Securities Act claims. The Court also reserves judgment regarding Jones Walker's Motion for Summary Judgment as to certain Plaintiffs' standing to bring suit in this litigation. SO ORDERED.